ROBERTSON, Presiding Judge.
This is an appeal from a proceeding wherein the trial court declared an act of the legislature to be unconstitutional.
In 1992 and 1993, this court, in State ex rel. G.J. v. W.J., 622 So.2d 353 (Ala.Civ.App.1992), and the Alabama Supreme Court, in Ex parte W.J., 622 So.2d 358 (Ala.1993), refused to allow the trial court to grant the defendant, who had been declared the legal father of a minor child, Rule 60(b), Ala.R.Civ. P., relief from a prior adjudication of paternity, even though the defendant had scientific evidence that he was not the father of the child.
In 1994, the Alabama Legislature enacted, and the Governor signed into law on April 26, 1994, Act No. 94-633, AlaActs 1994 (Act), codified as § 26-17A-1, Aia.Code 1975, which provides:
“(a) Upon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father. The court shall admit into evidence any scientific test recognized by the court that has been conducted in accordance with established scientific principles or the court may order a blood test, or a Deoxyribose Nucleic Acid test of the mother, father, and child. Whenever the court orders a test and any of the persons to be tested refuse to submit to the test, the fact shall be disclosed at the trial, unless good cause is shown.
“(b) The test shall be made by a qualified expert approved by the court. The *1086 expert may be called by the court or any party as a witness to testify to the test results and shall be subject to cross-examination by the parties. The test results may be admitted into evidence. If more than one test is performed and the results are conflicting, none of the test results shall be admissible as evidence of paternity or nonpaternity.
“(c) Compensation of the expert witness shall be paid by the petitioner.
“(d) In the event the child has been adopted the matter of paternity may not be reopened under this chapter.”
Based on this Act, K.M., the defendant in this paternity action, filed a petition to reopen this case because there was scientific evidence that he was not the father. Attached to the petition was a human leukocyte antigen (HLA) test which excluded him as being the father of K.H., the minor child at issue in this ease.
In response to the petition, the State moved to dismiss, alleging that the Act had only prospective application. The trial court made the child a party to the action and appointed a guardian ad litem (GAL) for the minor child. The GAL challenged the constitutionality of the Act on the grounds that it is “vague, ambiguous and has a plain indeterminable meaning” and that it “creates a denial of equal protection under the laws.” The State filed a memorandum brief, arguing that the Act applies prospectively only, that the Alabama Constitution of 1901 prohibits the retrospective application of the Act, and that the bastardization of children is against public policy. The GAL’s memorandum brief argued that the Act violates the public policy of this state, that it denies the equal protection guaranteed under the Alabama Constitution of 1901 and the United States Constitution, and that it is vague and ambiguous.
K.M. argued in his reply brief that before the Act there existed a situation in which the Alabama appellate courts, in following the common law as in Ex parte W.J., supra, were “required to perpetuate an injustice. In other words, an injustice existed for which there was no relief available.” K.M. contended that clearly, “these are the instances in which the legislature is bound to exercise its authority to make corrective measures. In this instance the corrective measure was to provide an extraordinary remedy under which a father-defendant may reopen a paternity case where there is [scientific evidence] that he is not in fact the father.... ”
Following oral argument of counsel and submission of the briefs, the trial court entered an order, finding (1) that the Act is unconstitutional because it violates the public policy favoring the legitimacy of children and the right to rely on finality of judgments; (2) that, through ease law, the Alabama Constitution of 1901 provides for equal protection of the law to each citizen of this state and that the Act is unconstitutional on that ground; (3) that the Act is not so vague or ambiguous as to render it unconstitutional; and (4) that the legislature intended the Act to be retroactive in its application and that it was not unconstitutional on that ground (the State’s motion to dismiss on this ground was denied). The trial court, ex mero motu, entered an amendment to the order, finding (5) that the Act violates the full faith and credit clause of the United States Constitution because of the Reciprocal State Enforcement of Duty to Support Act, URESA, an act originally enacted by the Alabama Legislature in 1951.
K.M. appeals. The State cross-appeals, raising one issue, the retrospective application of the Act. The GAL did not cross-appeal, consequently, there is no challenge to the trial court’s finding that the Act is not vague or ambiguous.
For the background facts of this case, see E.B.M. v. V.W., 586 So.2d 230 (Ala.Civ.App.1991). It is unnecessary to repeat all of those facts in this opinion, because the sole issue before this court is the constitutionality of the Act, i.e., § 26-17A-1, Ala.Code 1975.
We first point out that it is a well established principle of law that it is the duty of the trial courts and the appellate courts of this state to sustain the constitutionality of a legislative act unless it is clear beyond a reasonable doubt that it is in violation of the fundamental law. Crosslin v. City of Muscle Shoals, 436 So.2d 862 (Ala.1983).

*1087
PUBLIC POLICY

K.M. contends that the trial court erred in finding that the Act violates the public policy of the State of Alabama. The State argues that the Act violates the strong public policy which favors the legitimation of children and the public policy in favor of the finality of judgments.
We first note that pursuant to its authority, the Alabama Supreme Court promulgated Rule 60, Ala.R.Civ.P., which provides for relief from certain judgments and which, in certain cases, can affect the finality of judgments of legitimation. Ex parte State ex rel. McKinney, 575 So.2d 1024 (Ala.1990). Does the Alabama Legislature have equal authority to amend the Alabama Uniform Parentage Act, §§ 26-17-1 et seq., Ala.Code 1975, so as to provide for certain relief in order to undo an injustice in very special circumstances? We think so.
“When the legislature of a state has acted on a subject within constitutional authority, public policy is what the statute enacted says or indicates. Thus a constitutional statute cannot be contrary to public policy — it is public policy.” Higgins v. Nationwide Mutual Insurance Co., 50 Ala.App.691, 694, 282 So.2d 295, 298 (1973).
We find a part of K.M.’s brief on appeal, as it relates to the public policy established by this Act, worthy of quoting:
“In that regard, it is important to understand that these extraordinary remedies manifest a more important public policy than any of the ones cited by the Trial Court. That public policy involves ensuring public confidence in the edicts of our courts. It is quite obvious that where blatant injustices are allowed to stand, there is an erosion in public support [and] confidence in our court system. Accordingly, where, as in the instant case, the [defendant] can be conclusively established as a matter of fact not to be the father of a child and to be required to ‘in law[1] be the father of a child, it lessens the respect on which the decisions of the court are given. Thus, these extraordinary remedies which have been carved out by the legislature and the courts to attack judgments which are clearly inconsistent with the ‘finality of judgments,’ are designed to provide mechanisms by which justice is assured. Their availability to correct obvious injustices within our Courts are an essential cornerstone of Anglo-American jurisprudence. It is axiomatic, that where there is no remedy, there is no right. In this regard, the Alabama Legislature was acting in accord with the most basic principles in our society in providing a remedy to correct an obvious injustice and vindicate a right. That remedy is narrowly circumscribed and of limited availability.”
The trial court erred in holding that the Act violates the public policy of the State.

EQUAL PROTECTION

K.M. contends that the trial court erred in holding that the Act denies equal protection of the laws in violation of the Alabama Constitution of 1901 and the United States Constitution. We first point out that the trial court did not find that the Act violates the equal protection clause of the United States Constitution; instead, the trial court found that the Act violates the equal protection guaranteed to Alabama citizens by the Alabama Constitution of 1901 because it denies equal protection to fathers who are plaintiffs, and to mothers and children.
K.M. correctly points out that there is ho equal protection clause in the Alabama Constitution of 1901. See Ex parte Bronner, 623 So.2d 296 (Ala.1993) (Houston, J., concurring in the result). However, our Supreme Court has held that “Sections 1, 6, 22, State Constitution; Amendment 14, Federal Constitution ... taken together guarantee the equal protection of the laws.... ” Pickett v. Matthews, 238 Ala. 542, 545, 192 So. 261, 264 (1939). Later, our Supreme Court held: “Sections 1, 6, and 22 of the Alabama Constitution combine to guarantee equal protection of the laws. The essence of the theory of equal protection of the laws is that all similarly situated be treated alike. An individual cannot be subjected to arbitrary exercise of governmental powers.” City of Hueytown v. Jiffy Chek Co., 342 So.2d 761, 762 (Ala.1977) (emphasis added) (the 14th Amendment to the U.S. Constitution was *1088 omitted); see also Black v. Pike County Commission, 360 So.2d 303 (Ala.1978). “All similarly situated” individuals under this Act are defendants who have been declared the legal father of a child and who have scientific evidence that they are not the child’s father; each has equal protection under this Act. The Act does not allow the trial court to arbitrarily apply the Act to certain defendant-fathers and to deny other similarly situated defendant-fathers relief under the Act.
Further, the Alabama Legislature is presumed to have acted within its constitutional power in passing laws, even though in practice their laws result in some inequality, and “a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it.” State v. Colonial Pipeline Co., 471 So.2d 408, 412 (Ala.Civ.App.1984). Paternity proceedings are unique and different from all other legal actions. In ordinary civil actions there can be joint tort-feasors or disputable facts which may change as witnesses or parties age. In a paternity proceeding, however, there can be only one natural or biological father of a child. The legislature has liberally given many entities the right to bring paternity actions against putative fathers to determine paternity and to establish support for a child. See the Alabama Uniform Parentage Act, §§ 26-17-6 and 26-17-9, Ala.Code 1975.
The Alabama Legislature has now seen fit to enact legislation whereby, in exceptional cases and to remedy injustices, a defendant, who has been wrongfully accused and declared to be the legal father of a child but who later has scientific evidence that he is not the father, may reopen the case. Plaintiff-fathers, mothers, and children are also protected under the laws of this state when there is scientific evidence that the plaintiff-father is not the natural father, or that the defendant-father is not the natural father when the mother or some other entity was the plaintiff; they may seek Rule 60(b), Ala.R.Civ.P., relief. Ex parte W.J., supra. It is clearly within the legislature’s power to enact laws to ensure justice and to correct an injustice under a prior act of the legislature and not be in violation of §§ 1, 6, and 22 of the Alabama Constitution of 1901, since “all similarly situated” individuals have equal protection under the Act.
We further point out that the Act extends protection to the mother and others. Section 26-17A-2 provides:
“In any decree setting aside an order of paternity pursuant to this chapter, there shall be no claim for damages against the court rendering the initial order of paternity nor any reimbursement or recoupment of money or damages against the mother, the State, or any employee or agent of the State.”
The only kind of judgment that can be reopened or affected by this Act is a paternity judgment where the defendant has been wrongfully accused and there is scientific evidence that the defendant is not the father, i.e., the judgment is unjust. The relief is very limited; he can only reopen the case. § 26-17A-1. The Act cannot affect that judgment as far as money already paid to and received by the mother, because there can be no reimbursement or recoupment of money or other damages (false accusation) against the mother; the mother is protected under the Act. § 26-17A-2.
We point out that not only can scientific testing determine the non-existence or probable-existence of the father-child relationship, but it can also determine the probability of hereditary defects or diseases which may be detected and prevented in the child; therefore, the child benefits under this Act by the truth being established.
The trial court erred in holding that the Act violates the equal protection guaranteed to Alabama citizens by the Alabama Constitution of 1901.

RETROACTIVE APPLICATION

The State argues that the Act, if applied in the present case, will violate Art. IV, § 95, Ala. Const.1901, which provides that:
“There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement; and the legislature shall have no power to revive any right or reme *1089 dy which may have become barred by lapse of time, or by any statute of this state. After suit has been eomméneed on any cause of action, the legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit.”
The State contends that the Act may not revive K.M.’s right to challenge the paternity judgment after having failed to file a timely appeal from the paternity judgment. Why would a defendant admit paternity and immediately file an appeal? In any case, no legal authority is cited to support the State’s contentions on this issue; it is clear from the plain reading of the Act that it was intended to be applied retroactively. We affirm the trial court on this issue. Tyson v. Johns-Manville Sales Corp., 399 So.2d 263 (Ala.1981).

FULL FAITH AND CREDIT CLAUSE

The record and the pleadings do not reflect that any of the parties challenged the Act on this ground, unless it was done orally and without the benefit of a court reporter. Neither the State nor the GAL cites this court any authority in briefs to support this finding. Since the judgment at issue in this case is an Alabama judgment, no one had standing to challenge the constitutionality of the Act based on the Full Faith and Credit Clause of the United States Constitution. “[A] person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.” Clements v. Fashing, 457 U.S. 957, 966 n. 3, 102 S.Ct. 2836, 2845 n. 3, 73 L.Ed.2d 508 (1982) (citations omitted). Anyway, the trial court found the Act to be unconstitutional because of another legislative act, URESA, codified as §§ 30-1-80 through 98; however, no authority is cited for such a holding. Consequently, the trial court erred by holding the Act unconstitutional on this ground. We point out to the trial court that a constitutional act may be applied in an unconstitutional manner. Id.
We find that the State and the GAL have failed to establish by the necessary burden of proof that the Act is unconstitutional. The trial court erred in holding that the Act violates the public policy of this state, that the Act denies equal protection of the laws of this state, and that the Act violates the Full Faith and Credit Clause of the United States Constitution. The trial court did not err in holding the Act to be constitutionally retroactive. We hold that the Act is constitutional.
The trial court’s judgment is affirmed in part and reversed in part, and this case is remanded for further proceedings pursuant to § 26-17A-1, Ala.Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES and MONROE, JJ., concur.
THIGPEN, J., concurs in the result.
CRAWLEY, J., dissents.

. This test, dated 1987, was also attached to his present motion to reopen the paternity proceedings.