723 So.2d 644 (1997)
STATE ex rel. C.T.G.
v.
M.A.B.
Guardian ad litem for minor child J.B.
v.
M.A.B.
2951513, 2960061.
Court of Civil Appeals of Alabama.
April 11, 1997.
Application for Rehearing Denied May 30, 1997.
*645 J. Coleman Campbell and Lois Brasfield, asst. attys. gen., Department of Human Resources, for appellant.
W. Willson Jenkins of Jester & Jenkins, P.C., Florence, as guardian ad litem.
No brief filed for appellee.
YATES, Judge.
This is a paternity case.
C.T.G. and M.A.B. had previously been married; they divorced on October 1, 1984. In September 1985, the State, on behalf of C.T.G., the mother, filed a paternity complaint, asking the court to declare M.A.B. the father of J.B., born April 19, 1985. On January 17, 1986, M.A.B. acknowledged paternity, without benefit of independent legal counsel and/or blood tests; the court, on that same date, declared M.A.B. to be the father and ordered him to pay $25 per week as child support. M.A.B. paid the court-ordered child support on a regular basis, subsequently voluntarily increasing the amount he paid to $30 per week.
In December 1995, the State, on behalf of the mother, petitioned for an increase in child support; M.A.B. counter-petitioned, asking the court to order visitation. Additionally, M.A.B. moved for an order requiring a blood test to determine paternity, alleging that he had "received information that at the time of conception the mother was engaged in a sexual relationship with another male." The State objected to the blood test, arguing that, although § 26-17A-1, Ala.Code 1975, allows a paternity case to be reopened where the defendant presents scientific evidence indicating that he is not the father, no such evidence had been produced in this case. M.A.B. amended his motion to state that: because he and the mother were not married when the child was born there was no common law presumption of paternity; that he had not been represented by counsel at the initial hearing at which paternity was established; and that an order for the blood test was appropriate under Rule 60(b), Ala. R. Civ. P. A guardian ad litem was appointed to represent the child.
After a hearing, the court took the matter under advisement. Pending a ruling, M.A.B. had private DNA testing done; that testing excluded him as the biological father. The court, upon learning of the test results, ordered additional testing, over the objections of both the State and the guardian ad litem. Subsequent testing also excluded M.A.B. as the biological father. The court, on September 12, 1996, entered an order stating:
"Pursuant to § 26-17A-1, Code of Alabama (1975, as amended), [M.A.B.] is found not to be the biological father of [J. B.], a minor. All previous Orders of this Court requiring [M.A.B.] to provide support for the minor, as well as a right of visitation, are set aside and held to be void.
"The Court is aware of the close relationship between [M.A.B.] and [J.B.] and the parties are encouraged to allow the continuation of the relationship."
The State, on behalf of the mother, appeals, raising these issues: (1) whether M.A.B. was entitled to have the paternity adjudication set aside pursuant to § 26-17A-1, Ala.Code 1975; and (2) whether the trial court abused its discretion in allowing the defendant to challenge the paternity adjudication after 11 years. The guardian ad litem cross-appeals "to emphasize that the trial court erred in terminating the parental obligations of [the putative] father who had voluntarily chosen to acknowledge paternity of a minor child," and the guardian raises some constitutional issues. We reject the guardian ad litem's arguments challenging the constitutionality of the statute.
The mother learned she was pregnant after she and M.A.B. had divorced. The child was born, prematurely, six and one-half *646 months after the divorce. It is undisputed that she and M.A.B. had had sexual intercourse at least once after the divorce was final. During the same period of time, the mother also had sexual intercourse with the man she later married; she had withheld this information from M.A.B. The mother testified that she and M.A.B. had "always thought" that M.A.B. was the father. M.A.B. testified that he was present when the child was born and during the child's subsequent hospitalizations, and that he began keeping the child in his home when the child was only two months old. The child continued to visit M.A.B. and developed a loving relationship with M.A.B. and with M.A.B.'s parents. M.A.B. stated that he had J.B.'s last name changed to his own when the child was five years old. He further stated that he and the child have "had a great relationship."
When asked at trial what had made him challenge paternity, M.A.B. stated that, "about a year before all this took place," the mother had told his current wife and his sister-in-law that "she didn't know if [J.B.] was mine or not." The following exchange then took place:
"A. So then when [the mother] started in about this getting more money ..., and I offered her more money myself, you know, just to keep right on paying like I was doing, that I've always done all these years. But she started that, and like I said, I've already had a reason to disbelieve for a year now before that. I said, `Well, if she's going to do that I'm going to take and find out for sure if he's my kid or not if she's going to take and get a third of my paycheck.'
"Q. So it was initiated by her asking for an increase of child support that you then decided to challenge the paternity?
"A. Right. I mean
"Q. If she hadn't done that you wouldn't have
"A. Well, I didn't want ... to believe it, and I wanted to just let it go...."
We note that M.A.B. further testified that he had offered to increase his child support payments to $50 per week, but that the mother had refused to agree to that amount. He said that $50 per week was all he could afford to pay; that he had learned he could have the paternity blood testing done in Tennessee; and that after talking with the child for four hours about the "situation," he, without the knowledge or permission of the mother, took the child to Tennessee and had the blood tests performed. He stated: "I explained to [J.B.] that he had a right to know just as much as I did."
Our supreme court recently addressed the subject of reopening a prior paternity adjudication in Ex parte State ex rel. A.T., 695 So.2d 624 (Ala.1997). That case is distinguishable from the instant case. It concerned a putative father who had initially denied paternity. The trial court ordered a blood test; the putative father voluntarily signed, in 1983, an affidavit acknowledging paternity, rather than paying for the blood test. In 1994, the father, then seeking to be relieved of his legal responsibility, requested blood tests and the reopening of the paternity adjudication, pursuant to § 26-17A-1, Ala. Code 1975. The trial court ordered blood tests, which showed that E.W. was not the biological father. The trial court set aside the paternity order, finding that E.W. was not the father and ordering his parental rights and obligations terminated. The State appealed; this court affirmed the judgment of the trial court. On certiorari review, our supreme court, in reversing, stated, "E. W. voluntarily chose to accept the responsibility of being the child's legal father, regardless of his doubts as to paternity." Id., 695 So.2d at 627 (emphasis in original).
M.A.B. did not doubt his paternity, until he discovered some 10 years later, that the mother had also had sexual intercourse with another man during the same period of time that she and M.A.B. had had sexual intercourse after their divorce. As with the alleged father in E. W., later conclusive DNA testing excluded M.A.B. as the biological father. The distinguishing factor is that M.A.B. did not doubt his paternity and, therefore, had no reason to request a blood test at the time of the paternity adjudication.
In Ex parte State ex rel. McKinney, 567 So.2d 366 (Ala.Civ.App.1990), the alleged father admitted paternity to a child born out of *647 wedlock; 12 years later, upon learning that he had been sterile since birth, he filed a Rule 60(b)(6), Ala. R. Civ. P., motion to set aside the paternity judgment. The trial court granted his motion for relief. The State, on behalf of the mother, petitioned this court for a writ of mandamus ordering the trial judge to set aside his order granting relief. We denied the writ, holding that the father's recent discovery that he was sterile constituted exceptional circumstances warranting relief from the judgment. Id.
In K.W. v. State ex rel. S.G., 581 So.2d 855 (Ala.Civ.App.1991), K.W. had admitted paternity and was ordered to pay child support. He later, after the mother had told him that he was not the father of the child, moved the trial court to have the paternity adjudication set aside. The trial court denied the motion, finding that K.W. had had the opportunity to request a blood test at the time of the initial hearing. On appeal, this court reversed the trial court's judgment, finding that extraordinary circumstances existed requiring the granting of relief. Id.
Section 26-17A-1(a) states, in pertinent part:
"(a) Upon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father."
M.A.B. presented to the trial court scientific evidence indicating that he was not the father of J. B.; the court then ordered additional blood tests and, after receiving the results, set aside its previous orders requiring M.A.B. to pay child support for J.B. We must affirm the judgment.
AFFIRMED.
THOMPSON, J., concurs.
ROBERTSON, P.J., concurs in the result.
MONROE and CRAWLEY, JJ., dissent.
MONROE, Judge, dissenting.
I believe that Ex parte State ex rel. A.T. v. E.W., 695 So.2d 624 (Ala.1996), squarely applies to this case. Although I do not necessarily agree with the reasoning advanced by our Supreme Court in A.T., I believe that it must be followed by this court, and that in doing so, this court has no choice but to reverse the judgment below. Therefore, I must respectfully dissent.
CRAWLEY, Judge, dissenting.
I do not agree that M.A.B. is entitled to have his 1986 paternity adjudication set aside pursuant to § 26-17A-1, Ala.Code 1975.
M.A.B. has not only acknowledged this child for ten years, but has developed an extremely close relationship with him. The mother testified that J.B. "worships the ground [M.A.B.] walks on." She said that the child had been hurt because M.A.B. had not exercised his visitation rights during the pendency of the paternity action. The mother also stated that the boy had failed the fourth grade the preceding year largely because of his distress over the paternity proceedings. She testified that the child "doesn't get along with his step-daddy because he worships his daddy too much." The mother also said that the child had told her that he "wouldn't ever have another daddy." M.A.B. did not seek to have the prior paternity judgment set aside until the mother sought an increase in child support.
In Ex parte State ex rel. A.T. v. E.W., 695 So.2d 624 (Ala.1996), our supreme court held that § 26-17A-1 was not "designed to relieve a man from a deliberate and calculated choice he made years earlier, simply because he is now unwilling to pay support." 695 So.2d at 625-26.
It is true, as Judge Yates states, that E.W. is distinguishable. E.W. had doubts about whether he had fathered the child in question from the very beginning, yet he acknowledged paternity anyway. M.A.B., on the other hand, had no doubt that he had fathered the child until about a year before he sought relief. That distinction, however, may not be sufficient to justify a difference in outcome here.
Our supreme court has routinely denied relief from a paternity judgment to men like E.W. who chose to accept the responsibility *648 of legal fatherhood despite their doubts as to biological fatherhood. See, e.g., Ex parte State ex rel. J.Z., 668 So.2d 566 (Ala.1995); Ex parte W.J., 622 So.2d 358 (Ala.1993). Compare K.W. v. State ex rel. S.G., 581 So.2d 855 (Ala.Civ.App.1991)(defendant who had no reason to doubt that he was the father of the child at the time of the initial paternity proceeding granted post-judgment relief); Ex parte State ex rel. McKinney, 567 So.2d 366 (Ala.Civ.App.1990) (same).
The question of doubt as to biological fatherhood was relevant in J.Z., W.J., and other cases decided by our supreme court for the following reason: Those decisions were based on Rule 60(b), A.R.Civ. P., actions; Rule 60(b) requires the moving party to be diligent about protecting his own interests and to seek relief from a judgment within four months or within "a reasonable time." Obviously, the time at which a man first has doubts about his paternity of a child is a crucial factor in the "diligence" and "reasonableness" equations used for Rule 60(b) motions.
Section 26-17A-1, however, does not demand inquiries into the timeliness or reasonableness of a paternity defendant's assertion of rights. The statute has no time limit for reopening a paternity action. It states no requirement that the defendant be diligent in defending the first action, filing an appeal, or seeking a blood test at the earliest opportunity. On its face, the statute provides an automatic new trial on the ground of newly discovered scientific evidence.
In E.W., I think our supreme court "read in" a timeliness and diligence requirement to § 26-17A-1. The court held:
"[Section] 26-17A-1 was adopted in 1994 to allow a man adjudicated to be the biological father of a child to reopen the question of paternity. This does not mean that such a man can do so if he has failed to timely contest the adjudication of paternity.... [I]n this case, by signing the agreement and not having a blood test, E.W. failed to timely contest the question of paternity."

E.W., 695 So.2d at 625 (emphasis added). Perhaps anticipating the argument that its interpretation of § 26-17A-1 rendered the statute useless (or no different from a Rule 60(b) motion), the court responded:
"Refusing to allow E.W. to reopen the question of paternity does not render § 26-17A-1 ineffective.... An example of when § 26-17A-1 could be properly used would be if paternity was determined before scientific blood tests were available to make such a finding, and in the paternity action, the alleged father timely contested the claim of paternity but the court nevertheless found him to be the father."
Id. at 627-28.
Although the availability of DNA testing is relatively recent, HLA blood testing has been widely available since 1981. See Ex parte W.J., 622 So.2d at 361. In E.W., the court seems to be saying that § 26-17A-1 provides no relief for men adjudicated to be fathers after 1981. Those men, the court has apparently determined, are subject to the requirement that they timely assert their claims in order to obtain relief under § 26-17A-1 from a prior paternity judgment. They would be subject to the same requirement under Rule 60(b).
If this interpretation of the court's holding in E.W. is correct, then I applaud our supreme court's construction of § 26-17A-1. I have already expressed my opinion that the statute is unconstitutional on its face because it denies equal protection of the laws,[1] and because it violates the separation of powers provisions of the Alabama Constitution. See K.M. v. G.H., 678 So.2d 1084, 1089-97 (Ala.Civ.App.1995)(Crawley, J., dissenting).
In this case, M.A.B. amended his answer to the mother's petition for modification of child support to add a claim for relief under Rule 60(b). The record indicates that M.A.B., after receiving information that gave *649 him reason to doubt that he was the biological father of the child, waited over a year to seek relief from the prior judgment. If my interpretation of E.W. is correct, then this cause should be reversed and remanded with instructions that the trial court determine whether M.A.B.'s attack on the prior judgment was timely. Whether M.A.B.'s delay was reasonable under all the circumstances should be determined by the trial judge.
If my interpretation of E.W. is not correct, and M.A.B. is entitled to relief under § 26-17A-1 just by virtue of the fact that he had no reason to doubt he was the child's father when he acknowledged paternity, then I continue to adhere to the views I expressed in K.M. v. G.H., supra, specifically that § 26-17A-1 violates §§ 42 and 43 of the Alabama Constitution. The guardian ad litem made that argument at trial and served the Attorney General with notice of the constitutional challenge, but this court has not addressed the constitutional issue.[2]
NOTES
[1] In E.W., the court indicated, in a footnote, that "[s]ection 26-17A-1, when read in pari materia with the entire Uniform Parentage Act, could... be used by defendant/mothers, plaintiff/mothers, plaintiff/fathers, and children as well, to reopen the issue of paternity in appropriate cases."

E.W., 695 So.2d at 625, n. 1. Based on that reading of the statute, it would not deny equal protection.
[2] In the two cases concerning § 26-17A-1 that have reached our supreme court, that court has also not addressed the question whether the statute violates the separation of powers provisions of our state constitution. See K.M. v. G.H., 678 So.2d 1084 (Ala.Civ.App.1995), cert. quashed (Ala.1996), and E.W., supra.