Cynthia Cauthen sued Michael Yates in the Circuit Court of Madison County on August 29, 1994, alleging that Yates was the father of a child born to her on February 6, 1994. On motion of Yates, and pursuant to Ala. Code 1975, § 26-17-10, the case was transferred to the Juvenile Court of Madison County for a determination of parentage. The juvenile court ordered DNA testing by the University of Alabama Health Services Foundation Immunogenetics/DNA Diagnostic Laboratory ("UAB"). On March 28, 1995, UAB filed a report declaring that the probability of Yates's paternity was 99.96 percent.
The juvenile court held a trial of the case on June 13, 1995. On June 15, 1995, the juvenile court entered an order adjudging Yates to be the father of the child, ordering him to pay child support of $1,500 monthly beginning on July 1, 1995, ordering him to pay a child support arrearage of $13,520 by making additional payments of $500 monthly, and ordering him to include the child on any health insurance policy he maintained. Yates appealed to the circuit court on June 28, 1995, for a trial de novo.
In circuit court, Yates requested additional testing by UAB on the same genetic samples used in the first UAB test. On January 25, 1996, UAB issued a second report declaring the probability of Yates's paternity to be 99.99901 percent. On April 26, 1996, Yates moved for additional genetic testing on the ground that UAB's procedures did not follow guidelines established by the American Association of Blood Banks and that the procedures used by UAB varied from most other genetic testing procedures. The circuit court granted the motion for additional testing, on April 29, 1996. The testing laboratory was selected by a means agreed upon by the parties and approved by the court, whereby Cauthen selected a laboratory from a list of three supplied by Yates. The tests were performed by the Blood Center of Southeastern Wisconsin ("the Wisconsin Center"). On July 23, 1996, the Wisconsin Center issued a report declaring that Yates was excluded as the father of the child. On August 3, 1996, Yates moved the circuit court for pendente lite relief, seeking a suspension of his child support payments.
On October 28, 1996, the Wisconsin Center conducted a second test on the samples it had originally received and issued a more detailed report that once again excluded Yates as the father of the child. The parties agreed to a third series of tests to be performed by Genetic Design, a laboratory selected by Yates from a list proposed by Cauthen. The samples for this test were taken during October 1996 in the presence of a clergyman to assure the parties that there was no tampering with the samples. Genetic Design issued its report on November 21, 1996, again excluding Yates as the father. Yates renewed his motion for pendente lite relief to suspend his obligation to pay child support, and the circuit court granted that motion on March 27, 1997. Yates also filed a motion in limine to establish the admissibility of the reports of the Wisconsin Center and Genetic Design; the trial court granted that motion on March 28, 1997, based on the oral agreement of Cauthen's counsel.
On March 21, 1997, Yates filed a counterclaim, asserting claims under the Alabama Uniform Parentage Act; claims under the Alabama Litigation Accountability Act; claims for quantum meruit relief; and claims for damages based on fraud. The case was tried before the circuit court on June 3, 1997. On June 10, 1997, the circuit court entered a partial judgment finding that Yates was not the father of the child and relieving him of any obligation to the child. In pertinent part, the partial judgment states:
 "Having considered all of the evidence, the Court finds the issues in favor of the defendant. The Court expressly finds that the results of the five separate genetic tests performed on the parties by three separate laboratories are not conflicting within the meaning of Ala. Code, § 26-17-12 (1975, Supp. 1996), but are instead complimentary."
Cauthen appealed to this court from the partial final judgment, but this court dismissed the appeal as being from a nonfinal judgment. Cauthen v. Yates, [Ms. 2961106, October 30, 1997] ___ So.2d ___ (Ala.Civ.App. 1997) (table). *Page 1259 
On September 5, 1997, Yates moved for a summary judgment on his counterclaim. He also filed additional evidentiary submissions and briefs in support of his motion for summary judgment. Cauthen did not respond. On September 19, 1997, the trial court entered a summary judgment for Yates and awarded him a judgment against Cauthen for $41,223.70, representing the child support and medical expenses paid by Yates on behalf of the child before the June 10, 1997, judgment finding him not to be the father.[1]
In its September 19, 1997 judgment, the circuit court also ordered Cauthen to pay $19,605.98, an amount "representing one-half of the attorney fees and related costs reasonably incurred by the defendant in and immediately preceding this action." The court stated that it issued this judgment on the basis of the Alabama Uniform Parentage Act, Ala. Code 1975, § 26-17-17(c), and the Litigation Accountability Act, Ala. Code 1975, § 12-19-272(c). With respect to the Litigation Accountability Act, the circuit court stated:
 "[T]he Court expressly finds that plaintiff unnecessarily expanded the proceedings by improper conduct. Plaintiff made little or no effort to determine the validity of her action before it was asserted. After the action was filed, and the overwhelming weight of scientific evidence showed the claim of paternity against this defendant not to be valid, plaintiff nevertheless took no action to dismiss her claim, but continued to press forward with the action. Conclusive facts have been available to the plaintiff at least since November 1996, following the report of the third round of DNA tests, to show plaintiff that her claim was not valid. The Court further declares that this award is for willful and malicious injury by the plaintiff to the defendant."
Cauthen appeals, contending: (1) that the circuit court erred in excluding Yates as the father, in light of Cauthen's testimony that she had sex with no other man during the time that she could have conceived; (2) that the trial court, by considering what she called "conflicting" blood tests, violated Ala. Code 1975, § 26-17-12(b); (3) that the trial court erred in awarding a judgment to Yates for reimbursement of child support and medical expenses he had paid on behalf of the child; and (4) that the trial court erred in awarding a judgment to Yates for one-half of his attorney fees and costs.
 I. Sufficiency of the Evidence
Cauthen's first argument is that the trial court erred in weighing the evidence. Because this case was tried before the circuit court based on conflicting testimony, the ore tenus rule applies.
 "[U]nder the ore tenus standard of review, the trial court's findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong. The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence. The reason for giving such deference to the trial judge's findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses' manner and demeanor and has the better opportunity to pass upon the credibility of their testimony."
Ex parte Pielach, 681 So.2d 154, 154-55 (Ala. 1996) (citations omitted). The ore tenus rule is fully applicable to determinations of paternity based on conflicting evidence.B.R.L. v. State ex rel. K.H.S., 664 So.2d 908
(Ala.Civ.App. 1995); State ex rel. D.K. v. R.T., 599 So.2d 627
(Ala.Civ.App. 1992); Underwood v. Underwood, 460 So.2d 1306
(Ala.Civ.App. 1984).
Although Cauthen denied having had sex with any other man during the period of conception, she did admit to having sex with another man in January 1993. This testimony contradicted an earlier affidavit and her deposition testimony, wherein she had stated that Yates had been her only sexual partner *Page 1260 
during 1993. She also admitted to other close relationships with men during the time of conception, but she denied that they were sexual partners. Yates presented evidence showing that Cauthen had had sex with another man in January 1993. Yates also presented evidence that Cauthen had had at least one other close relationship with a different man during 1993, a relationship that included overnight stays with that man in the same motel room.
Yates also presented expert testimony concerning DNA testing procedures from Dr. Michael Murray, a professor at the Louisiana State University Medical Center in New Orleans and a director of paternity testing at a private genetics laboratory. Dr. Murray described the mechanics of the various DNA testing techniques used in the case and the procedures and calculations used in determining probabilities and exclusions. Although Dr. Murray questioned the testing procedures and data used in the UAB tests, he testified that the probabilities indicated in the first two UAB tests and the exclusions in the subsequent tests were complimentary and not in conflict. He also indicated that a "probability," even a high probability as reported by UAB, necessarily indicated the possibility of another result, whereas an "exclusion," as reported by the Wisconsin Center and Genetic Design, indicated that a tested individual could not possibly be the father of a tested child.
Yates also presented the testimony of Dr. Brian Meehan, an associate director of National Legal Laboratories, Inc. Dr. Meehan basically corroborated the testimony of Dr. Murray. Various other experts indicated in depositions and affidavits that the genetic tests did not conflict and that the exclusions in the later tests meant that there was no possibility that Yates was the father of Cauthen's child.
In summary, there was medical evidence excluding Yates as the father of Cauthen's child. Whether Yates was the only man with whom she had had sex during the time of conception was disputed. Further, the court had the opportunity to observe the parties and the child. Under these circumstances, this court cannot conclude that the circuit court's judgment that Yates was not the father was plainly and palpably wrong. Pielach,supra.
 II. The "Conflicting" Blood Tests
Cauthen's second argument is that the trial court violated Ala. Code 1975, § 26-17-12, by admitting "conflicting" blood tests. At the time of the circuit court's June 10, 1997, order excluding Yates from paternity, § 26-17-12(b) provided:
 "(b) Any tests shall be made by an expert qualified as an examiner of blood types who shall be approved by the court. The expert may be called by the court or any party as a witness to testify to the blood test results and shall be subject to cross-examination by the parties. The blood test results may be admitted into evidence by the defendant. The blood test results may be admitted into evidence by the state only if the statistical probability of the alleged father's paternity is available. Blood testing methods include, but are not limited to, the human leukocyte antigen test. If more than one blood test is performed and the results are conflicting, none of the blood test results shall be admissible as evidence of paternity or nonpaternity."
(Emphasis added.)[2]
Cauthen's argument on this issue fails for two reasons. First, the question whether the genetic tests are conflicting is a question of fact, and the trial court's determinations of fact are given the presumption of correctness afforded by the ore tenus rule. Pielach, supra. The trial court explicitly determined that the genetic tests were not "conflicting" *Page 1261 
within the meaning of § 26-17-12(b), and that determination is supported by expert testimony in the record. Accordingly, the circuit court's determination that there was no conflict is not plainly and palpably wrong.
Second, the record shows that the results of the Wisconsin Center and Genetic Design tests made after the UAB tests were admitted with Cauthen's consent. Further, Cauthen did not object when the results of the genetic tests were presented at trial. Finally, Cauthen made no post-judgment motion under Rule 59, Ala.R.Civ.P., raising the issue. Our law is well settled that this court does not review issues raised for the first time on appeal. Andrews v. Merritt Oil Co., 612 So.2d 409
(Ala. 1992); Norman v. Bozeman, 605 So.2d 1210 (Ala. 1992);Merritt v. Wayne Gargus Pontiac-GMC Truck, Inc., 686 So.2d 340
(Ala.Civ.App. 1996).
 III. Reimbursement of Child Support and Medical Expenses
Cauthen's third argument is that the circuit court exceeded its authority in awarding Yates a judgment for the child support and expenses he had incurred on behalf of the child. Cauthen begins her argument with the idea that "Paternity proceedings are unique and different from all other legal actions." K.M. v. G.H., 678 So.2d 1084, 1088
(Ala.Civ.App. 1995). Because paternity actions are unique, she argues, she should be afforded the protection of Ala. Code 1975, §26-17A-2:
 "In any decree setting aside an order of paternity pursuant to this chapter, there shall be no claim for damages against the court rendering the initial order of paternity nor any reimbursement or recoupment of money or damages against the mother, the State, or any employee or agent of the State."
However, Chapter 17A specifically refers to the reopening of a paternity proceeding by a defendant previously adjudicated the father. Ala. Code 1975, § 26-17A-1; K.M., supra. This case is not the reopening of a prior paternity judgment, nor was it begun by a person previously adjudicated to be the father. We conclude that Chapter 17A does not apply to the situation presented in this case.
This case is an appeal from a judgment, entered after a trial de novo in the circuit court, that reversed a judgment of paternity and an award of child support by the juvenile court. Our research directs us to no case exactly on point with the instant facts. We therefore begin with a consideration of the law generally applicable to the effect of a reversal after a trial de novo. Generally, the reversal of a judgment on appeal annuls the judgment in its entirety. Ex parte Riley,464 So.2d 92 (Ala. 1985); Shirley v. Shirley, 361 So.2d 590
(Ala.Civ.App. 1978). Moreover, the effect of a trial de novo on appeal is to entirely displace the action of the court appealed from.
 "Trial de novo means a new trial in circuit court in which the whole case is retried as if no trial whatever had been had in the juvenile court. Alabama Equity Corp. [v. Hall, 46 Ala. App. 143, 239 So.2d 215 (Ala.Civ.App. 1970)]; Black's Law Dictionary 1349 (5th ed. 1979)."
State ex rel. Hillman, 629 So.2d 656, 657 (Ala.Civ.App. 1993).See also Ezell v. Childs, 497 So.2d 496 (Ala.Civ.App. 1985).
Under this authority, we conclude that the circuit court's judgment declaring that Yates was not the father of Cauthen's child wholly supplants the judgment of the juvenile court to the contrary. Because the judgment of the circuit court takes effect as if the case had never been tried in juvenile court,Hillman, supra, we conclude that the effect of the circuit court's judgment was that Yates never had an obligation to pay child support or medical expenses on behalf of the child. It follows that the equitable powers of the circuit court enable it to require the repayment of child support and expenses paid on an obligation that did not exist. See, e.g., Ex parteMcCurley, 412 So.2d 1236 (Ala. 1982) (affirming order requiring restitution of fines and costs paid pursuant to plea of guilty to an unconstitutional statute). See also Ex parte AmSouthMortgage Co., 679 So.2d 251 (Ala. 1996); Durham v. Harbin,530 So.2d 208 (Ala. 1988); and Jordan v. Mitchell, 705 So.2d 453
(Ala.Civ.App. 1997) (cases discussing the power of *Page 1262 
the court to award the repayment of funds paid by mistake or fraud on equitable theories of unjust enrichment).
We also note that the circuit court's award of child support and expenses already paid by Yates was based upon the court's finding that "this judgment represents money obtained by the plaintiff from the defendant through a false representation on the part of the plaintiff, that the defendant was the only man who could possibly be the father of the child." This finding is supported by the evidence, and we presume that it is correct.Pielach, supra.
The circuit court's authority to set aside a judgment obtained through fraud and to provide the appropriate equitable remedy is settled. Maddox v. Hunt, 281 Ala. 335, 202 So.2d 543
(1967); Battle v. Morris, 265 Ala. 581, 93 So.2d 428 (1957). Moreover, the court has the authority to require restitution of moneys paid under a judgment that is later reversed. Ex parteRobertson 235 Ala. 184, 177 So. 902 (1937); Carter v. Mitchell,225 Ala. 287, 142 So. 514 (1932). Accordingly, we conclude that that portion of the circuit court's judgment requiring the repayment of the child support and expenses paid by Yates is due to be affirmed.
 IV. The Award of Attorney Fees and Costs
Cauthen also argues that the trial court erred in ordering her to pay one-half of Yates's attorney fees and costs. The trial court specifically based that award of fees and costs on Ala. Code 1975, § 26-17-17(c) and § 12-19-272(c). In pertinent part, § 26-17-17(c) provides:
 "It is the express intent of this chapter that parties to proceedings under the chapter should pay the fees and expenses of retained counsel, expert witnesses, guardians ad litem, the costs of appropriate tests and other costs of the trial as they may, themselves, incur. The court may order reasonable fees for attorneys, expert witnesses, guardian ad litem fees, costs of appropriate tests and other costs of the trial, including docket fees, to be paid by the parties in such proportions as the court may direct."
The award of attorney fees and costs under this statute is discretionary with the trial court. B.R.L., supra.
The record indicates that Cauthen, from the moment she discovered she was pregnant, asserted that Yates was the only possible father of her child. She maintained this position, and her lawsuit asserting Yates's paternity, even after the results of the third series of genetic tests, those received from Genetic Design in November 1996, once again excluded Yates as the father. Under these circumstances, the circuit court did not abuse its discretion in awarding Yates one-half of his "fees and expenses of retained counsel, expert witnesses, guardians ad litem, the costs of appropriate tests and other costs of the trial."
Section 12-19-272(c) provides:
 "The court shall assess attorneys' fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action or any part thereof, or asserted any claim or defense therein, that is without substantial justification, or that the action or any part thereof, or any claim or defense therein, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including but not limited to abuses of discovery procedures available under the Alabama Rules of Civil Procedure."
We review the circuit court's order on this issue by applying the standard of whether it abused its discretion. Warner v.Bullington, 624 So.2d 594 (Ala.Civ.App. 1993). The circuit court expressly found that Cauthen "unnecessarily expanded the proceedings by improper conduct." That finding is supported by the record and is presumed correct. Pielach, supra. Under the circumstances of this case and the specific findings of the circuit court, we conclude that the circuit court did not abuse its discretion. Accordingly, that portion of the circuit court's judgment ordering Cauthen to pay one-half of Yates's litigation expenses is also due to be affirmed. *Page 1263 
 V. Summary
The circuit court's findings, both in its partial judgment and in its final judgment as to Yates's counterclaim and motion for summary judgment, are supported by the record. The trial court's determination that the later genetic tests were not conflicting is supported by the record and is presumed correct, assuming that issue is properly before this court. Because the judgment of the circuit court after the trial de novo wholly replaces the judgment of the juvenile court, we conclude that the circuit court did not exceed its authority in awarding Yates the amount of child support and expenses he had paid for the child under the juvenile court's order. Finally, we conclude, under the circumstances of this case, that the circuit court did not abuse its discretion in awarding Yates one-half of his litigation expenses. The circuit court's judgment is due to be, and it is hereby, affirmed.
The appellee's request for attorney fees and costs on appeal is denied.
AFFIRMED.
YATES, CRAWLEY, and THOMPSON, JJ., concur.
MONROE, J., concurs in part and dissents in part.
[1] The circuit court did not make note of its order suspending Yates's child support obligation on March 27, 1997, but the court apparently drafted its summary judgment broadly to ensure the inclusion of every expense paid by Yates on behalf of the child.
[2] On July 1, 1997, this section was amended to state: "(b) Any tests shall be made by an expert qualified in genetic testing who shall be approved by the court. The expert may be called by the court or any party as a witness to testify to the genetic test results and shall be subject to cross-examination by the parties. The genetic test results may be admitted into evidence by the defendant, the plaintiff, or the state. Genetic testing methods include, but are not limited to, the human leukocyte antigen test. The results of any and all genetic tests shall be made available to the court."