KENNEDY, Justice
(concurring in part and dissenting in part).
I concur in Part II, Part III.A, and Part IV of the main opinion. I dissent as to Part III.B. I agree that § 26-17A-1, Ala.Code 1975, when applied retroactively, violates the doctrine of separation of powers. However, I believe that prospective application of the statute also violates the separation of powers doctrine. Additionally, I believe that § 26-17A-1 violates the equal protection guaranties of the United States Constitution and the Alabama Constitution.
As early as 1869, this Court held that the legislature could not pass an act requiring courts to reopen eases and grant new trials, because to do so would violate the separation of powers doctrine. Sanders v. Cabaniss, 43 Ala. 173 (1869). In Sanders, the post-Civil War legislature passed a bill requiring courts, if petitioned, to reopen judgments that had been rendered after May 25,1865, if the actions in which the judgments were entered had originated before that date.
“[T]he manifest purpose of the legislature, in the passage of this act, was to effect an opening and setting aside of certain judgments and decrees, and to grant new trials and rehearings, by peremptorily commanding it to be done by the courts and judges, *666 without permitting them to exercise any judgment in the matter; they certainly exercised no judicial power, for they are prohibited from having any mind in the case.
“If there can be any doubts on this subject they are cleared away and removed, by reference to the title of the act, which is ‘An act to declare void certain judgments, and to grant new trials in certain cases therein mentioned.’ To do this is clearly to exercise a judicial, and not a legislative power; a power that legitimately belongs to courts and judges.”
43 Ala. at 186.
In 1949, the Alabama legislature enacted a law requiring circuit courts to grant new trials under certain circumstances. Codified at Title 15, § 305, Ala.Code of 1940, that law provided that if the prosecutor in a criminal case “makes any comment concerning the defendant’s failure to testify, [then] a new trial must be granted on motion filed within thirty days from entry of the judgment.” See Broadway v. State, 257 Ala. 414, 415, 60 So.2d 701 (1952).
In Broadway, this Court recognized that the courts derive their power — including the authority of the circuit courts to grant new trials — from the constitution:
“It has been the firm understanding of the courts in the interpretation of the Constitution that those courts which derive their existence from the Constitution, succeeding common law courts of historic origin, cannot have their functions and their orderly processes disturbed by any legislative enactment.”
257 Ala. at 417-18, 60 So.2d at 704.
The Broadway Court stated that, except insofar as the constitution authorizes it to do so, “ ‘the legislature cannot ... diminish the essentials of the jurisdiction, functions, or judicial powers so conferred on [the courts], nor abrogate or abridge their inherent powers or functions. In other words, the legislature cannot take from courts power which it does not give.’ ” 257 Ala. at 418, 60 So.2d at 704, quoting 21 C.J.S. Courts, § 122 (emphasis added in Broadway).
“To give the 1949[act] the effect which its language imports is to deprive the circuit court of its constitutional power to function in a judicial way in that respect. It cannot be rightly conceived that there is legislative competency to create a duty on the part of such a court without exercising any discretion or judgment, when a performance of that duty is an exercise of the judicial function, and if it is performed a compliance would result in the duty to perform a ministerial act on the part of the court to grant a motion for a new trial if the defendant is convicted and moves for a new trial. Such, it seems to us, is so plainly an infringement by legislative power upon judicial power that we cannot afford to labor under it. The Constitution which created the circuit court and this Court did not contemplate that it should be required to act ministerially in passing upon the rights and liberties of parties before those courts, when such act calls for a judicial function.... ”
Broadway, 257 Ala. at 418, 60 So.2d at 704-OS.
As Judge Crawley noted in his well-reasoned dissent in K.M. v. G.H., 678 So.2d 1084 (Ala.Civ.App.1995), other state courts have struck down similar attempts by legislatures to reopen final judgments. In Ratcliffe v. Anderson, 72 Va. (31 Gratt.) 105 (1878), the Virginia Supreme Court of Appeals struck down a post-Civil War statute authorizing the reopening of judgments rendered after 1866. In Ratcliffe, a debtor wanted to reopen a case after a final judgment had been rendered, in order to show that he had contracted with his creditor using Confederate currency as the standard of value, and to have his debt reduced from its face amount to its post-War depreciated value. “[T]he legislature interfered to provide a new remedy for the benefit of a class of persons to obtain a rehearing in suits in which judgments and decrees had been made, and became final against them.” 72 Va. (31 Gratt.) at 111.
In Lawson v. Jeffries, 47 Miss. 686, 12 Am. Rep. 342 (1873), the Mississippi Supreme Court held that legislation granting new trials in all cases where the judgments were *667 rendered after 1861 violated the separation of powers provisions in the state and federal Constitutions. As the Mississippi Supreme Court aptly noted:
“‘If a review of such judgments may be ordered for one cause, it may be equally so for another, or any cause within the discretion of the legislature.’ ”
47 Miss, at 704,12 Am. Rep. at 351.
The Mississippi court also correctly stated:
“If a legislative body may grant a new trial, it may order a continuance, annul a judgment, suspend a trial, direct the judgment to be entered, and otherwise interfere with the discretion and independence of the judiciary. The evils that would flow from such an assertion of legislative power are too apparent to be enumerated....”
47 Miss, at 704,12 Am.Rep. at 353.
Long before the “new trial” cases arose following the Civil War, the New Hampshire legislature had attempted to order a court to grant a new trial to the losing party in a probate proceeding. In Merrill v. Sherburne, 1 N.H. 199, 202, 8 Am.Dec. 52, 55 (1818), the New Hampshire Supreme Court noted that the act “does not empower the court in their discretion to grant or refuse a new trial; but directs that ‘the cause shall be heard’ again; and thus amounts to an absolute reversal of the judgment_” In discussing the separation of powers doctrine, the court stated:
“One prominent reason for creating the judicial distinct from the ... legislative department, was that the former might determine when laws were ... ‘repugnant [or contrary to the constitution],’ and so operate as a check upon the latter, and as a safeguard to the people against its mistakes or encroachments. But the judiciary would in every respect cease to be a check on the legislature, if the legislature could at pleasure revise or alter any of the judgments of the judiciary. The legislature, too, would thus become the court of last resort, ‘the superior court,’ or ‘supreme judicial’ tribunal of the state .... ”
1 N.H. at 210, 8 Am.Dec. at 61-62 (emphasis added).
As recently as 1984, the Massachusetts Supreme Judicial Court struck down a statute that would have restored a dismissed case to the active docket of a trial court. The court wrote:
“The Legislature apparently felt that the judgment of dismissal unjustly deprived the plaintiff of his right to seek compensation for the taking of his property. To remedy that perceived injustice, it attempted to nullify the judgment by legislatively restoring the case to its status before the judgment was entered. But ‘[t]he judgment of a court must stand as final. It can be reversed, modified or superseded only by judicial process. It is wholly under the control of the judicial department of government. The Legislature cannot “supersede” a judgment of a court by its direct declaration to that effect.’ Because the effect of [the statute] would be to annul the Superior Court judgment dismissing the case, the statute is an attempt by the Legislature to exercise a power that is exclusive to the judiciary, and thus the statute violates [the separation of powers provision of the Massachusetts constitution.]”
Spinelli v. Commonwealth, 393 Mass. 240, 242, 470 N.E.2d 795, 796 (1984).
In 1995, the United States Supreme Court in Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), held that by requiring federal courts to reopen final judgments entered pursuant to § 10(b) of the Securities Exchange Act, Congress had violated the fundamental principle of separation of powers. Plant involved Congress’s reaction to the Supreme Court’s earlier decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), in which the Court had adopted a uniform national limitations period for civil actions brought under § 10(b). After Lampf was decided, a number of § 10(b) actions were dismissed as untimely; Plaut’s case was among them. Plaut did not appeal the dismissal. Some months later, Congress enacted a statute that rejected the holding in Lampf for cases filed before Lampf was decided; that statute effectively required a court to reinstate a *668 § 10(b) action on the motion of the plaintiff if the action would have been considered timely under the law that was applicable before Lamp/ was decided.
The Supreme Court held that the Article III grants the federal courts “the power, not merely to rule on eases, but to decide them, subject to review only by superior courts in the Article III hierarchy.” Plant, 514 U.S. at 218-19, 115 S.Ct. 1447. The Supreme Court concluded that “[b]y retroactively commanding the federal courts to reopen final judgments, Congress has violated this fundamental principle.” 514 U.S. at 219,115 S.Ct. 1447.
The separation of powers doctrine is “violated when an individual final judgment is legislatively rescinded for even the very best of reasons, such as the legislature’s genuine conviction (supported by all the law professors in the land) that the judgment was wrong; and it is violated 40 times over when 40 final judgments are legislatively dissolved.” Plant, 514 U.S. at 228, 115 S.Ct. 1447.
The Supreme Court in Plant addressed the argument that the statute was similar to Rule 60(b), F.R.Civ.P., which authorizes the trial courts to relieve parties from final judgments for grounds such as excusable neglect, newly discovered evidence, fraud, or any other reason justifying relief. Rule 60(b), F.R.Civ.P. (which is virtually identical to Rule 60(b), Ala.R.Civ.P.), calls for the exercise of the trial court’s discretion. The Supreme Court said of that Rule:
“Rule 60(b) ... does not impose any legislative mandate to reopen [a final judgment] but ‘merely reflects and confirms the courts’ own inherent and discretionary power, firmly established in English practice long before the foundation of our Republic,’ to set aside a judgment whose enforcement would work inequity. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). Thus, Rule 60(b), and the tradition that it embodies, would be relevant refutation of a claim that reopening a final judgment is always a denial of property without due process; but they are irrelevant to the claim that legislative instruction to reopen impinges upon the independent constitutional authority of the courts.”
514 U.S. at 233-34,115 S.Ct. 1447.
The legislature’s mandate in § 26-17A-1 that a trial court reopen a final judgment will, whether applied retroactively or applied prospectively, undermine the checks and balances built into our system of government. The Alabama Constitution gives the judicial branch the power to interpret the law. That power necessarily includes the power to render dispositive judgments. It is understandable that the legislature would want to undo the injustice of forcing a man to pay’ child support when scientific proof excludes his being the biological father of that child. However, the legislature was without the power to do so. The power to undo such a judgment remains with the trial court, under Rule 60(b), Ala.R.Civ.P.
Section 26-17A-1 also violates the equal protection doctrine of the United States Constitution and the Alabama Constitution because it allows only one group of people affected by paternity determinations to reopen a case. Under the statute, neither mothers nor children could undo a paternity adjudication.
Section 26-17A-1 states: “Upon petition of the defendant ..., where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father.” A court construing a statute must give the words used in the statute “their plain, natural, ordinary, and commonly understood meaning.” Ex parte New England Mutual Life Ins. Co., 663 So.2d 952, 955 (Ala.1995).
“The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. If a statute is not ambiguous or unclear, the courts are not authorized to indulge in conjecture as to the intent of the Legislature or to look to consequences of the interpretation of the law as written.”
Ex parte Presse, 554 So.2d 406, 411 (Ala.1989). Clearly, only a father can reopen a paternity judgment under this statute, given *669 unambiguous language in the statute. If the legislature had intended to allow mothers and children to reopen final adjudications of paternity, it would have so stated in the statute.
The equal protection doctrine requires that all “similarly situated” persons be treated alike. For purposes of this case, other similarly situated persons would include those persons who were parties to a prior paternity adjudication that is now challenged. Does the legislature’s clear exclusion of mothers and children affected by paternity judgments from the group allowed to reopen judgments violate the Equal Protection Clause of the Fourteenth Amendment or the equal protection guaranty of Alabama law?
The Fourteenth Amendment to the United States Constitution provides that “No state shall ... deny to any person within its jurisdiction the equal protection of the laws.” In considering whether a state statute violates the Equal Protection Clause, we apply different levels of scrutiny to different types of classifications. At the lowest level, a statutory classification must be rationally related to a legitimate government interest. At the highest level, classifications based on race or national origin, or affecting fundamental rights, are given strict scrutiny. Between these lies a level of intermediate scrutiny, which has been applied to discriminatory classifications based on gender or illegitimacy. Clark v. Jeter, 486 U.S. 466, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).
To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective. Does the distinction made in § 26-17A-1 bear a substantial relationship to some important state interest?
Section 26-17A-1 authorizes a defendant in a paternity action to reopen an adjudication of paternity if he has scientific proof indicating that he is not the biological father of the child. The purpose of the statute, to remedy the injustice of erroneous paternity adjudications, is an important government interest. However, the classifications established by the legislature are not “substantially related” to that purpose. By allowing only defendant fathers to refute an adjudication of paternity, the goal of remedying erroneous paternity adjudications is achieved for only some of those persons who are similarly situated. Therefore, the classification violates the equal protection guaranties of the United States Constitution and the laws of Alabama.
In Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), the United States Supreme Court dealt with a New York Domestic Relations Law provision that made a distinction between unwed fathers and unwed mothers; that provision permitted an unwed mother, but not an unwed father, to block the adoption of their child simply by withholding consent. The Supreme Court held that that distinction was substantially related to the state’s interest in providing adoptive homes for its illegitimate children. The distinction “ ‘must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.’ ” Caban, 441 U.S. at 391, 99 S.Ct. 1760, quoting Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920), and Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
This Court has determined that §§ 1, 6, and 22 of the Declaration of Rights of the Alabama Constitution combine to guarantee equal protection under the laws of Alabama. Moore v. Mobile Infirmary Ass’n, 592 So.2d 156 (Ala.1991). I conclude that the statutory classification created by § 26-17A-1 is not substantially related to the object of the legislation, and therefore violates both the United States Constitution and the laws of Alabama.