YATES, Judge.
This is a paternity case.
C.T.G. and M.A.B. had previously been married; they divorced on October 1, 1984. In September 1985, the State, on behalf of C.T.G., the mother, filed a paternity complaint, asking the court to declare M.A.B. the father of J.B., bom April 19, 1985. On January 17, 1986, M.A.B. acknowledged paternity, without benefit of independent legal counsel and/or blood tests; the court, on that same date, declared M.A.B. to be the father and ordered him to pay $25 per week as child support. M.A.B. paid the court-ordered child support on a regular basis, subsequently voluntarily increasing the amount he paid to $30 per week.
In December 1995, the State, on behalf of the mother, petitioned for an increase in child support; M.A.B. counter-petitioned, asking the court to order visitation. Additionally, M.A.B. moved for an order requiring a blood test to determine paternity, alleging that he had “received information that at the time of conception the mother was engaged in a sexual relationship with another male.” The State objected to the blood test, arguing that, although § 26-17A-1, Ala.Code 1975, allows a paternity case to be reopened where the defendant presents scientific evidence indicating that he is not the father, no such evidence had been produced in this case. M.A.B. amended his motion to. state that: because he and the mother were not married when the child was born there was no common law presumption of paternity; that he had not been represented by counsel at the initial hearing at which paternity was established; and that an order for the blood test was appropriate under Rule 60(b), Ala. R. Civ. P. A guardian ad litem was appointed to represent the child.
After a hearing, the court took the matter under advisement. Pending a ruling, M.A.B. had private DNA testing done; that testing excluded him as the biological father. The court, upon learning of the test results, ordered additional testing, over the objections of both the State and the guardian ad litem. Subsequent testing also excluded M.A.B. as the biological father. The court, on September 12,1996, entered an order stating:
“Pursuant to § 26-17A-1, Code of Alabama (1975, as amended), [M.A.B.] is found not to be the biological father of [J. B.], a minor. All previous Orders of this Court requiring [M.A.B.] to provide support for the minor, as well as a right of visitation, are set aside and held to be void.
“The Court is aware of the close relationship between [M.A.B.] and [J.B.] and the parties are encouraged to allow the continuation of the relationship.”
The State, on behalf of the mother, appeals, raising these issues: (1) whether M.A.B. was entitled to have the paternity adjudication set aside pursuant to § 26-17A-1, Ala.Code 1975; and (2) whether the trial court abused its discretion in allowing the defendant to challenge the paternity adjudication after 11 years. The guardian ad litem cross-appeals “to emphasize that the trial court erred in terminating the parental obligations of [the putative] father who had voluntarily chosen to acknowledge paternity of a minor child,” and the guardian raises some constitutional issues. We reject the guardian ad litem’s arguments challenging the constitutionality of the statute.
The mother learned she was pregnant after she and M.A.B. had divorced. The child was born, prematurely, six and one-half *646 months after the divorce. It is undisputed that she and M.A.B. had had sexual intercourse at least once after the divorce was final. During the same period of time, the mother also had sexual intercourse with the man she later married; she had withheld this information from M.A.B. The mother testified that she and M.A.B. had “always thought” that M.A.B. was the father. M.A.B. testified that he was present when the child was born and during the child’s subsequent hospitalizations, and that he began keeping the child in his home when the child was only two months old. The child continued to visit M.A.B. and developed a loving relationship with M.A.B. and with M.A.B.’s parents. M.A.B. stated that he had J.B.’s last name changed to his own when the child was five years old. He further stated that he and the child have “had a great relationship.”
When asked at trial what had made him challenge paternity, M.A.B. stated that, “about a year before all this took place,” the mother had told his current wife and his sister-in-law that “she didn’t know if [J.B.] was mine or not.” The following exchange then took place:
“A. So then when [the mother] started in about this getting more money ..., and I offered her more money myself, you know, just to keep right on paying like I was doing, that I’ve always done all these years. But she started that, and like I said, I’ve already had a reason to disbelieve for a year now before that. I said, ‘Well, if she’s going to do that I’m going to take and find out for sure if he’s my kid or not if she’s going to take and get a third of my paycheck.’
“Q. So it was initiated by her asking for an increase of child support that you then decided to challenge the paternity?
“A. Right. I mean—
“Q. If she hadn’t done that you wouldn’t have—
“A. Well, I didn’t want ... to believe it, and I wanted to just let it go.... ”
We note that M.A.B. further testified that he had offered to increase his child support payments to $50 per week, but that the mother had refused to agree to that amount. He said that $50 per week was all he could afford to pay; that he had learned he could have the paternity blood testing done in Tennessee; and that after talking with the child for four hours about the “situation,” he, without the knowledge or permission of the mother, took the child to Tennessee and had the blood tests performed. He stated: “I explained to [J.B.] that he had a right to know just as much as I did.”
Our supreme court recently addressed the subject of reopening a prior paternity adjudication in Ex parte State ex rel. A.T., 695 So.2d 624 (Ala.1997). That case is distinguishable from the instant case. It concerned a putative father who had initially denied paternity. The trial court ordered a blood test; the putative father voluntarily signed, in 1983, an affidavit acknowledging paternity, rather than paying for the blood test. In 1994, the father, then seeking to be relieved of his legal responsibility, requested blood tests and the reopening of the paternity adjudication, pursuant to § 26-17A-1, Ala. Code 1975. The trial court ordered blood tests, which showed that E.W. was not the biological father. The trial court set aside the paternity order, finding that E.W. was not the father and ordering his parental rights and obligations terminated. The State appealed; this court affirmed the judgment of the trial court. On certiorari review, our supreme court, in reversing, stated, “E. W. voluntarily chose to accept the responsibility of being the child’s legal father, regardless of his doubts as to paternity.” Id., 695 So.2d at 627 (emphasis in original).
M.A.B. did not doubt his paternity, until he discovered some 10 years later, that the mother had also had sexual intercourse with another man during the same period of time that she and M.A.B. had had sexual intercourse after their divorce. As with the alleged father in E. W., later conclusive DNA testing excluded M.A.B. as the biological father. The distinguishing factor is that M.A.B. did not doubt his paternity and, therefore, had no reason to request a blood test at the time of the paternity adjudication.
In Ex parte State ex rel. McKinney, 567 So.2d 366 (Ala.Civ.App.1990), the alleged father admitted paternity to a child born out of *647 wedlock; 12 years later, upon learning that he had been sterile since birth, he filed a Rule 60(b)(6), Ala. R. Civ. P., motion to set aside the paternity judgment. The trial court granted his motion for relief. The State, on behalf of the mother, petitioned this court for a writ of mandamus ordering the trial judge to set aside his order granting relief. We denied the writ, holding that the father’s recent discovery that he was sterile constituted exceptional circumstances warranting relief from the judgment. Id.
In K.W. v. State ex rel. S.G., 581 So.2d 855 (Ala.Civ.App.1991), K.W. had admitted paternity and was ordered to pay child support. He later, after the mother had told him that he was not the father of the child, moved the trial court to have the paternity adjudication set aside. The trial court denied the motion, finding that K.W. had had the opportunity to request a blood test at the time of the initial hearing. On appeal, this court reversed the trial court’s judgment, finding that extraordinary circumstances existed requiring the granting of relief. Id.
Section 26-17A-l(a) states, in pertinent part:
“(a) Upon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father.”
M.A.B. presented to the trial court scientific evidence indicating that he was not the father of J. B.; the court then ordered additional blood tests and, after receiving the results, set aside its previous orders requiring M.A.B. to pay child support for J.B. We must affirm the judgment.
AFFIRMED.
THOMPSON, J., concurs.
ROBERTSON, P.J., concurs in the result.
MONROE and CRAWLEY, JJ., dissent.