SEE, Justice.
These petitions concern the reopening of a final judgment of paternity. The trial court allowed á man who had previously been adjudicated the father of a child to proffer deoxy-ribose nucleic acid (“DNA”) evidence indicating that he was not the child’s biological father. The trial court reopened the judgment of paternity, pursuant to Ala.Code 1975, § 26-17A-1; entered an order finding the previously adjudicated father not to be the child’s biological father; and set aside the earlier order requiring him to pay child support. The Court of Civil Appeals affirmed. State ex rel. C.T.G. v. M.A.B., 723 So.2d 644 (Ala.Civ.App.1997). We granted the petitions of the guardian ad litem and the State for certiorari review. We hold that the previously adjudicated father’s action was not barred by the statute of limitations; that he is not entitled to relief under § 26-17A-1 because the statute, if applied retroactively, would violate the separation-of-powers princi- *651 pie, but that he may be entitled to relief under Rule 60(b), Ala. R. Civ. P. Therefore, we reverse and remand.
C.T.G. (the mother) and M.A.B. (the previously adjudicated father) were divorced on October 1, 1984. Immediately following her divorce from M.A.B., the mother learned she was pregnant. The child, J.B., was born six and one-half months after the divorce.
In 1985, the State, on behalf of C.T.G., filed a paternity action, asking the court to declare M.A.B. the father. M.A.B. acknowledged paternity. The paternity judgment became final in 1986. The trial court ordered M.A.B. to pay $25 per week in child support.
In December 1995, the State, on behalf of the mother, petitioned for an increase in child support. M.A.B. responded and sought to reopen the 1986 paternity judgment, pursuant to § 26-17A-1 and Rule 60(b), alleging that he had received information that at the time of conception the mother was engaged in a sexual relationship with another man. After a hearing, the court took the matter under advisement. While the ruling was pending, M.A.B had DNA testing performed on himself and on J.B. The test results excluded M.A.B as the biological father of J.B.; M.A.B. notified the trial court of the test results, and the trial court ordered additional testing, over the objections of both the State and the guardian ad litem for J.B. The subsequent testing also indicated that M.A.B. was not the biological father of J.B. In 1996, the trial court reopened the 1986 paternity judgment, pursuant to § 26-17A-1, and then held that M.A.B. was not the father and was not liable for child support. The Court of Civil Appeals affirmed. In their petitions for cer-tiorari review, the State and the guardian ad litem make numerous arguments; those arguments are best understood in the context of the history leading up to the enactment of § 26-17A-1.
7. Background
In 1984, the Alabama Legislature passed the Alabama Uniform Parentage Act. Ala. Acts 1984, Act No. 84-244, p. 375 (codified as amended at Ala.Code 1975, § 26-17-1 to -22). Section 26-17-5(a)(l) creates a presumption of paternity between a man and a child born during the man’s marriage to the child’s mother or born within 300 days after the termination of the marriage. Section 26-17-5(b) provides that a presumption of paternity can be rebutted in an action by “clear and convincing evidence” that the presumed father is not the biological father.
Until 1994, if an action to establish the existence of a presumed paternity relation had been reduced to a final judgment subject to the principles of res judicata, the presumed father could ask a court to reopen that final judgment only under Rule 60(b), Ala. R. Civ. P. Under Rule 60(b)(6), Alabama courts allowed a previously adjudicated father, who obtained blood test evidence or DNA evidence indicating that he was not the biological father, to reopen a final judgment of paternity. The previously adjudicated father, however, was required to make his motion to reopen the final judgment within a “reasonable time” after discovering reason to doubt his paternity. See, e.g., K.W. v. State ex rel. S.G., 581 So.2d 855 (Ala.Civ.App.1991) (holding that a previously adjudicated father could challenge a 4-year-old paternity judgment because he acted within a “reasonable time” of learning that he might not be the father); Ex parte State ex rel. McKinney, 567 So.2d 366 (Ala.Civ.App.1990) (holding that a previously adjudicated father could challenge a 12-year-old paternity judgment because he challenged it within a “reasonable time” after learning of his sterility). In 1993, however, this Court denied Rule 60(b)(6) relief to a man who challenged a 9-year-old paternity judgment with DNA evidence that showed he was not the biological father. Ex parte W.J., 622 So.2d 358, 360 (Ala.1993). Because the man had had reason to doubt his paternity at the time of the original proceeding, but had failed to act within a “reasonable time,” the previous paternity judgment was res judicata. Id. at 362.
In 1994, apparently in reaction to this Court’s denial of relief in W.J., supra, on res judicata grounds, the Legislature enacted § 26-17A-1. See City of Birmingham v. Hendrix, 257 Ala. 300, 307, 58 So.2d 626, 633 (1952) (stating that in attempting to discern *652 the legislative intent of a statute, it is permissible to examine the law as it existed before the statute was enacted). Section 26-17A-1 provides in pertinent part:
“(a) Upon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father. The court shall admit into evidence any scientific test recognized by the court that has been conducted in accordance with established scientific principles or the court may order a blood test, or a Deoxyribose Nucleic Acid test of the mother, father, and child. Whenever the court orders a test and any of the persons to be tested refuse to submit to the test, the fact shall be disclosed at the trial, unless good cause is shown.”
(Emphasis added.)[1] Under § 26-17A-l(a), a previously adjudicated father can petition for a reopening of the final judgment of paternity, without regard to the “reasonable time” requirement of Rule 60(b)(6), if he presents scientific evidence indicating that he is in fact not the biological father. Of course, the trial court must determine that the evidence is indeed scientifically valid and therefore reliable. See generally Turner v. State, [Ms. 1952024, January 16, 1998] - So.2d - (Ala.1998) (discussing the definition of “scientific” evidence).

II. Statute of Limitations

The State contends that the reopening procedure of § 26-17A-1 is not available to M.A.B., because, it argues, the five-year limitations period of § 26-17-6(a), a part of the Alabama Uniform Parentage Act, bars this action to establish the nonexistence of paternity presumed under § 26-17-5(a)(l). We disagree.
Section 26-17-6(a) provides that a mother, a child, or a presumed father may, within five years of the child’s birth, bring an action to establish the “existence" of the paternity relationship presumed under § 26-17-5(a)(l). The State contends that the five-year limitations period of § 26-17-6(a) prohibits an action brought by a presumed father to establish the nonexistence of paternity presumed under § 26-17-5(a)(l). A plain reading of § 26-17-6(a) and (b) refutes this contention. Section. 26-17-6(a) and (b) provide:
“(a) A child, a child’s natural mother, or a man presumed to be the child’s father under subdivision (1), (2), or (3) of Section 26-17-5(a), may bring an action within five years of the birth of the child for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a); or
“(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of *653 the father and child relationship presumed under subdivision (4) or (5) or (6) of Section 26-17-5(a).”
(Emphasis added.)
Section 26-17-6(a) expressly limits to five years after a child’s birth an action to declare the “existence ” of the father and child relationship presumed under § 26-17-5(a)(1), (2), or (3). Had the Legislature intended the same five-year limitations period to apply to an action to establish the “nonexistence ” of the relationship, it would have included the term “non-existence” in § 26-17-6(a), as it did in § 26-17-6(b). The choice to exclude the word “non-existence” in § 26-17-6(a) indicates that the Legislature did not intend to impose a strict five-year limitations period on actions brought to challenge a presumption of paternity. See Commonwealth v. O’Brien, 390 Pa. 551, 136 A.2d 451 (1957) (holding that a statute providing for blood testing in “any proceeding to establish paternity” did not authorize blood tests in a proceeding by the putative father to challenge paternity); see generally House v. Cullman County, 593 So.2d 69, 75 (Ala.1992) (stating that a court should not arbitrarily disregard marked differences in terminology, but should infer that material differences in language in different clauses of a statute were not inadvertent).[2]

III. Separation of Powers

The child’s guardian ad litem argues that the legislative command of § 26-17A-1 — that trial courts reopen final judgments — impinges on the judicial power’ to render final judgments, thereby violating the separation-of-powers principle embodied'in §§ 42 and 43 of the Constitution of Alabama of 1901.[3] Sections 42 and 43 mandate that the three principal powers of government shall be exercised by separate departments. Section 42 provides:
“The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.”
Section 43 provides:
“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
*654 The separation-of-powers principle embodied in §§ 42 and 43 may be traced to the French political philosopher Montesquieu. In 1748, Montesquieu posited the political maxim that an individual’s liberty depends directly upon separation of the legislative, executive, and judicial powers of government. Montesquieu stated:
“All would be lost if the same man or the same body of principal men, either of nobles, or of the people, exercised [the] three [governmental] powers: that of making the laws, that of executing public resolutions, and that of judging the crimes or the disputes of individuals.”
Montesquieu, The Spirit of the Laws 157 (Cohler et al. trans., Cambridge Univ. Press 1989).[4] Expounding on the proposed federal Constitution’s embodiment of Montesquieu’s separation-of-powers principle, James Madison stated:
“If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself. A dependence on the people is, no doubt, the primary control on the government; but experience has taught mankind the necessity of auxiliary precautions.
“... In a single republic, all the power surrendered by the people is submitted to the administration of a single government; and usurpations are guarded against by a division of the government into distinct and separate departments.”
The Federalist No. 51, at 322-23 (James Madison) (Clinton Rossiter ed., 1961) (emphasis added).
The People of the United States, and the People of Alabama, transformed Montesquieu’s maxim from political philosophy into fundamental law by ratifying Constitutions that expressly vest the three great powers of government in three separate branches. See U.S. Const, art. I, § 1 (vesting the legislative power in Congress); id. at art. II, § 1, cl. 1 (vesting the executive power in the President); id. at art. Ill, § 1 (vesting the judicial power in the Supreme Court and inferior federal courts); Ala. Const.1901, § 44 (vesting the legislative power in the Legislature); id. at § 113 (vesting the executive power in the Governor); id. at amend. 328, § 6.01(a) (vesting the judicial power in the Unified Judicial System). The political maxim posited by Montesquieu and embodied in the United States and Alabama Constitutions as a fundamental legal principle mandates that no branch of government be allowed to exercise any power vested in another branch and not vested in it. Since the ratification of the federal and Alabama Constitutions, the application of the separation-of-powers principle in actual cases has constructed the specific boundaries that separate the powers of the three branches of government. See, e.g., Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (holding that President Truman’s seizure of the nation’s steel *655 mills was an invalid usurpation of the legislative power); Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 669 (1976) (holding that Congress’s appointment of purely executive officers to the Federal Election Commission was an invalid usurpation of the executive power); United States v. Klein, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871) (holding that Congress’s prescription of rules of decision for Article III courts was an invalid usurpation of the judicial power); Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421, 431, 15 L.Ed. 435 (1855) (recognizing that an act of Congress cannot annul a judgment of the Supreme Court that finally determines the rights of private parties).[5]
This Court has held that an attempt by the Legislature to reopen previously rendered final judgments violated the Alabama Constitution’s separation-of-powers principle:
“[T]he manifest purpose of the legislature, in the passage of this act, was to effect an opening and setting aside of certain judgments and decrees, and to grant new trials and rehearings, by peremptorily commanding it to be done by the courts and judges, without permitting them to exercise any judgment in the matter; they certainly exercised no judicial power, for they are prohibited from having any mind in the case.”
Sanders v. Cabaniss, 43 Ala. 173, 186 (1869) (emphasis added);[6] id. at 184 (citing Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) at 431). Accord Broadway v. State, 257 Ala. 414, 60 So.2d 701 (1952) (holding that a statute requiring courts to grant new criminal trials impermissibly impinged on the judicial power).
Under the federal constitution, the Supreme Court of the United States has held that three types of legislation violate the separation-of-powers principle by encroaching on the judicial power. Plant v. Spendthrift Farm, Inc., 514 U.S. 211, 218-19, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). First, legislation that prescribes rules of decision for the Judiciary is, under certain circumstances, unconstitutional. Id. at 218, 115 5.Ct. 1447 (citing Klein, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519). Second, legislation that requires the review of judicial decisions by the other branches of government is impermissible. Plant, 514 U.S. at 218, 115 S.Ct. 1447 (citing Haybum’s Case, 2 U.S. (2 Dali.) 408 (1792)). Third, legislation that would change the law incorporated into a final judgment rendered by the Judiciary violates the separation-of-powers principle. Plant, 514 U.S. at 218-19,115 S.Ct. 1447.
A The Legislature’s Retroactive Reopening of Final Judgments
In Plant, 514 U.S. at 225, 115 S.Ct. 1447, the Supreme Court applied the third component of the separation-of-powers principle to strike down a statute that required courts to reopen judgments that had previously become final. The Supreme Court elaborated on the third component of the separation-of-powers principle as it affected the contours of the judicial power:
*656 “Article III establishes a ‘judicial department’ with the ‘province and duty ... to say what the law is’ in particular cases and controversies. Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60 (1803).[7] The record of history shows that the Framers crafted this charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to decide them, subject to review only by superior courts in the Article III hierarchy — with an understanding, in short, that ‘a judgment conclusively resolves the case’ because ‘a judicial Power’ is one to render dispositive judgments. Easterbrook, Presidential Review, 40 Case W. Res. L.Rev. 905, 926 (1990). By retroactively commanding the federal courts to reopen final judgements, Congress has violated this fundamental principle.”
Plant, 514 U.S. at 218-19, 115 S.Ct. 1447 (second emphasis added).[8]
The Supreme Court continued:
“It is the obligation of the last court in the [Article III] hierarchy that rules on the case to give effect to Congress’s latest enactment, even when that has the effect of overturning the judgment of an inferior court, since each court, at every level, must ‘decide according to existing laws.’ Having achieved finality, however, a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable to that very case was something other than what the courts said it was.”
Plaut, 514 U.S. at 227, 115 S.Ct. 1447 (emphasis in original) (citations omitted). Thus, the core judicial power is the power to declare finally the rights of the parties, in a particular case or controversy, based on the law at the time the judgment becomes final. In the words of the Supreme Court:
“The finality that a court can pronounce is no more than what the law in existence at the time of judgment will permit it to pronounce. If the law then applicable says that the judgment may be reopened for certain reasons, that limitation is built into the judgment itself, and its finality is so conditioned.”
Plaut, 514 U.S. at 234, 115 S.Ct. 1447. Therefore, to the extent § 26-17A-1 is applied retroactively to change the reopening provisions incorporated into paternity judgments that became final before that section was enacted, it impinges on the core judicial power.[9]
*657 This conclusion is buttressed by the Plaut Court’s rejection of the argument that Congress could amend Rule 60(b), Fed.R.Civ.P., to reopen final judgments retroactively.[10] While the Plaut Court recognized that Congress could amend Rule 60(b), Fed.R.Civ. P.,[11] it stated that to give such an amendment retroactive effect would impermissibly change the law that was incorporated into the final judgment. Plaut, 514 U.S. at 234-37,115 S.Ct. 1447.[12]
*658 Similarly, the Alabama Legislature cannot retroactively amend Rule 60(b), Ala. R. Civ. App., to change the law of finality that was incorporated into final judgments before the Legislature’s amendment. The paternity judgment in this case became final in 1986, approximately eight years before § 26-17A-1 became law. Thus, the trial court and the Court of Civil Appeals erred' in applying § 26-17A-1 to change the rules of finality incorporated into M.A.B.’s 1986 final judgment of paternity.[13]

B. The Legislature’s Prospective Reopening of Final Judgments

Although retroactive application of § 26-17A-1 to reopen final judgments would violate the separation-of-powers principle by encroaching on the core judicial power, to the extent that § 26-17A-1 is applied only prospectively to judgments that have become final since that section was enacted there is no violation of the separation-of-powers principle. The Supreme Court has stated, “Congress could undoubtedly enact prospective legislation permitting, or indeed requiring, this Court to make equitable exceptions to an otherwise applicable rule of finality, just as district courts do pursuant to Rule 60(b).” Plaut, 614 U.S. at 237, 115 S.Ct. 1447 (emphasis original). Accord Sanders, 43 Ala. at 180 (discussing the separation-of-powers principle and stating, “ ‘[T]o declare what the law is, or has been, is a judicial power; to declare what the law shall be, is legislative.’ ”) (quoting Thomas M. Cooley, Constitutional Limitations 91-95 (1868)). Similarly, the Alabama Legislature may amend Rule 60(b), Ala. R. Civ. P., but it may not do so in a manner that impinges on the judicial power by retroactively changing the laws that were incorporated into the judgment when it became final.
In Board of Education of Choctaw County v. Kennedy, 256 Ala. 478, 482, 55 So.2d 511, 514 (1951), this Court stated: “ ‘It is the duty of the court to construe a statute so as to make it harmonize with the constitution if this can be done without doing violence to the terms of the statute and the ordinary canons of construction.’ ” (Quoting Almon v. Morgan County, 245 Ala. 241, 246, 16 So.2d 511, 516 (1944)). This Court has long recognized:
“ ‘It may be laid down as a fundamental rule for the construction of statutes that *659 they mil be considered to have prospective operation only, unless a legislative intent to the contrary is expressed or is necessarily to be implied from the language used or the particular circumstances; especially where to construe the act as retrospective in its operation would render it obnoxious to some constitutional provision, though the fact that the retrospective operation would not be unconstitutional, does not require the act to be construed as restros-pective [sic].’ ”
Greenwood v. Trigg, Dobbs & Co., 143 Ala. 617, 619, 39 So. 361, 361 (1905) (emphasis added) (citation omitted). Accord In re Moneys Deposited in and Now Under the Control of the United States District Court for the Western District of Pennsylvania, 243 F.2d 443, 448 (3d Cir.1957) (“[A] prospective construction is the more appropriate where as here it will eliminate a serious question of constitutional validity which would arise if the statute were to be given retroactive effect.”); Norman J. Singer, Sutherland Statutory Construction, § 41.04 (5th ed. 1991) (“The principal explanation offered by the courts is that the statute must be construed to sustain its constitutionality and thus prospective operation will be presumed where a retroactive operation would produce invalidity.”). Thus, if § 26-17A-1 can reasonably be construed to operate prospectively, a holding of constitutional infirmity can be avoided.
The statutes struck down in Plaut and in Sanders expressly required retroactive operation.[14] In contrast, the act codified at § 26-17A-1 does not expressly require retroactive operation, but instead provides: “This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.” Ala. Acts 1994, Act No. 94-633, § 4. Accordingly, we construe § 26-17A-1 to eliminate the “reasonable time” limitations period of Rule 60(b)(6) only for those judgments of paternity that become final on or after April 26, 1994, when that section became law.

TV. Rule 60(b)

Although § 26-17A-1 is not available to M.A.B., whose paternity judgment became final in 1986, Rule 60(b)(6), which was incorporated into that judgment, is available to M.AB. Rule 60(b)(6), unlike § 26-17A-1, requires a previously adjudicated father to make a motion to reopen the judgment “within a reasonable time.”[15] Previously, this Court has rigidly interpreted the “reasonable time” limitation of Rule 60(b), holding that a “reasonable time” began to run when a previously adjudicated father had any reason to doubt that he was the biological father. See, *660 e.g., W.J., 622 So.2d at 362 (holding that the reasonable time allowed by Rule 60(b)(6) began to run when the previously adjudicated father had some reason to doubt that he was the biological father).
Upon further consideration, we believe that in a paternity case a trial court should apply equitable principles, including the doctrine of laches, in determining when the “reasonable time” allowed by Rule 60(b)(6) begins to run and when it expires. See, e.g., Merrill v. Merrill, 260 Ala. 408, 411, 71 So.2d 44, 46 (1964) (stating that the doctrine of laches does not depend on any particular period of time, “but is a principle of good conscience dependent upon the facts of each case”). In determining whether a “reasonable time” has expired, the trial court should consider several factors, including the circumstances under which the original paternity judgment was rendered; the circumstances under which, and when, the previously adjudicated father came to doubt that he was the biological father; when he sought to obtain scientific evidence to determine paternity; when he presented the scientific evidence to the trial court or asked the trial court to order scientific testing; and the • burdens imposed on the previously adjudicated father and on the child by the continued enforcement of the prior paternity adjudication or by the reopening of the judgment. See generally Rule 1(c), Ala. R. Civ. P. (stating that the Rules of Civil Procedure “shall be construed ... to secure the just ... determination of every action”); W.J., 622 So.2d at 363 (Maddox, J., dissenting); id. at 363-64 (Houston, J., dissenting).[16]
In this case, the trial court premised its holding on a retroactive application of § 26-17A-1 and did not address M.A.B.’s Rule 60(b)(6) motion. On remand, it should consider that motion; in doing so, it should review the facts and circumstances and consider the factors set out above, in determining whether M.A.B. filed his Rule 60(b)(6) motion within a reasonable time.

V. Summary

In sum, we hold that the limitations period of § 26-17-6(a) does not apply to actions to establish the nonexistence of paternity and that § 26-17A-1, interpreted to apply prospectively, does not violate the separation-of-powers principle. A paternity judgment that became final before the effective date of § 26-17A-1 — April 26, 1994 — is subject to being reopened only under Rule 60(b)(6), and then only if the motion to reopen it is filed within a “reasonable time.” A paternity judgment that became final on or after April 26, 1994, is subject to being reopened under Rule 60(b)(6) or under § 26-17A-1, which contains no “reasonable time” requirement. We further hold that although the trial court did not reach the issue, M.A.B. may be entitled to relief under Rule 60(b)(6). Accordingly, we reverse the judgment of the Court of Civil Appeals with instructions for that court to order further proceedings in the trial court not inconsistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON and LYONS, JJ., concur.
MADDOX, J., concurs in Part II; dissents from Part III.A; and concurs in the result as to Part III.B.
ALMON and SHORES, JJ., concur in Parts II, III.A, and IV, and dissent from Part III.B.
KENNEDY, J., concurs in Parts II, III.A, and IV, and dissents from Part III.B.
COOK, J., concurs in Parts II, III.B, and IV, and dissents from Part III.A.

. By addressing "paternity,” instead of “child support,” the Legislature evidenced an intent to expand the scope of Rule 60(b)(6)’s exception to res judicata with respect to paternity judgments. Compare Ex parte W.J., 622 So.2d 358 (Ala.1993) (holding .that a prior judgment determining "paternity” was subject to res judicata), with Tucker v. Tucker, 681 So.2d 592, 594 (Ala.Civ.App.1996) (stating that "judgments as to child support are never res judicata”).
Moreover, § 26-17A-2, which limits the relief available upon the setting aside of a paternity judgment, provides:
"In any decree setting aside an order of paternity pursuant to this chapter, there shall be no claim for damages against the court rendering the initial order of paternity nor any reimbursement or recoupment of money or damages against the mother, the State, or any employee or agent of the State.”
(Emphasis added.) Thus, in addition to using the word "paternity,” instead of the term "child support,” the Legislature precluded the “recoupment of ... damages against the mother.” The word "damages,” as used in § 26-17A-2, prevents not only the recovery of previously paid child support, but also the recovery of damages for the false accusation of paternity, or for defamation. See K.M. v. G.H., 678 So.2d 1084, 1088 (Ala.Civ.App.1995) (stating that § 26-17A-2 prevents the recovery of damages against the mother for the false accusation of paternity), cert. quashed, 678 So.2d 1084 (Ala.Civ.App.), cert. denied,-U.S.-, 117S.CL 511, 136 L.Ed.2d 401 (1996); see generally Anderton v. Gentry, 577 So.2d 1261, 1263-64 (Ala.1991) (explaining the elements of defamation and slander related to accusations concerning sexual conduct). It therefore appears that the Legislature intended § 26-17A-1 to provide a broader avenue for relief from the numerous consequences of erroneous paternity determinations than was provided by Rule 60(b)(6) as interpreted in W.J., 622 So.2d at 360.

. We note that § 26-17A-1 provides for the reopening of a final judgment of paternity "[u]pon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father." (Emphasis added.) The phrase "paternity proceeding” is a broad phrase, and its plain meaning encompasses any legal proceeding at which paternity is determined. See generally State ex rel. Johnson v. Independent School Dist. No. 810, 260 Minn. 237, 245, 109 N.W.2d 596, 602 (1961) (defining "proceeding” to include "actions and special proceedings before judicial tribunals as well as proceedings pending before quasi-judicial officers and boards"). In Alabama, an action to determine paternity "may be joined with an action for divorce, annulment, separate maintenance or support.” Ala.Code 1975, § 26-17-9(a). We conclude that § 26-17A-1 applies to allow a court to reopen any judgment of paternity, whether entered pursuant to a paternity action, a divorce action, or some other action. Cf. Latourell v. Dempsey, 518 N.W.2d 564, 566 (Minn.1994) (construing "proceedings under [the Minnesota Parentage Act]” to include child custody and visitation proceedings). Our conclusion makes unnecessary any discussion of the guardian ad litem's argument that § 26-17A-1 discriminates against certain children based on the type of proceeding at which paternity was adjudicated.

. We note that although the parties raised no issue regarding the Contracts Clause, this Court has previously stated that "[a] judgment is a contract.” Weaver v. Lapsley, 43 Ala. 224, 233 (1869). In Weaver, at 230-31, 233, this Court held that a statute declaring certain final judgments void and granting new trials violated both the separation-of-powers principle and the Contracts Clause of the Constitution of Alabama of 1865. See generally Ala. Const.1901, § 22 ("[N]o ex post facto law, nor any law, impairing the obligations of contracts ... shall be passed by the legislature....”); § 95 (“There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement....”).

. Montesquieu further posited:
“The political liberty of the subject is a tranquillity of mind arising from the opinion each person has of his safety. In order to have this liberty, it is requisite the government be so constituted as one man need not be afraid of another.
"When the legislative and executive powers are united in the same person, or in the same body of magistrates, there can be no liberty; because apprehension may arise, lest the same monarch or senate should enact tyrannical laws, to execute them in a tyrannical manner.
“Again, there is no liberty, if the judiciary power be not separated from the legislative and executive. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control; for the judge would be then the legislator. Were it joined to the executive power, the judge might behave with violence and oppression."
I Montesquieu, The Spirit of the Laws 151-52 (Thomas Nugent trans., 1900). Montesquieu’s theory reflected the practical lessons of history concerning the concentration of governmental power. 1 Joseph Story, Commentaries on the Constitution of the United. States § 524 (5th ed. 1891) (“The general reasoning by which the [separation-of-powers] maxim, is supported ... seems entirely satisfactory^, but wjhat is of far more value than any mere reasoning, experience has demonstrated it to be founded in a just view of the nature of government, and the safety and liberty of the people.”).

. Thus, the Framers' intent to incorporate Montesquieu’s separation-of-powers maxim into the architecture of the Constitution became a practical reality:
"By the time of President Jackson, the structure of separated powers was so well institutionalized that, as Professor Forrest McDonald has written, '... The order was firmly established and self-maintaining: constitutional government had become part of the second nature of homo politicus Americanus.' Thus the intent of the Framers has survived not merely as a theory of how this government should work but as an explanation of how it does in fact work.”
John S. Baker, Jr., Constitutional Architecture, 16 Harv. J.L. & Pub. Pol'y 59, 65-66 (1993) (quoting Forrest McDonald, Novus Ordo Seclorum: The Intellectual Origins of the Constitution 292 (1985)).

. Sanders dealt with the predecessor to § 42 of the Constitution of Alabama of 1901 — Article III of the Constitution of Alabama of 1865 — which provided:
" § 1. The powers of the government of the state of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy to wit: Those which are legislative to one; those which are executive to another; and those which are judicial to another.
" § 2. No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.”

. Chief Justice Marshall, the author of Marbury v. Madison, had strong convictions about the separation-of-powers principle. See Jean Edward Smith, John Marshall: Definer of a Nation 78 (1996) ("From Montesquieu, whose seminal work. The Spirit of the Laws, was translated into -English in 1750, Marshall derived a crisp understanding of the doctrine of the separation of powers.’1)'

. The principle of separation of powers is especially pertinent with respect to the reopening of judicial decrees. Alexander Hamilton noted:
"A legislature, without exceeding its province, cannot reverse a determination once made in a particular case; though it may prescribe a new rule for future cases.”
The Federalist No. 81, at 484 (Alexander Hamilton) (Clinton Rossiter ed., 1961).

. Justice Maddox and Justice Cook suggest that the separation-of-powers principle should operate only to prevent a statute from depriving a person of a "vested right.” 723 So.2d at 663 (Maddox, J., concurring in part, concurring in the result in part, and dissenting in part); 723 So.2d at 669 (Cook, J., concurring in part and dissenting in part). Justice Maddox and Justice Cook state that Plaut can be distinguished from this case because Plaut dealt with an extension of the statutory limitations period that affected vested rights of the parties.
Although mentioned in dicta in cases interpreting various constitutional provisions, the concept of "vested rights” primarily concerns due process and common-law protections of individual interests from governmental action, not the specific source of the governmental action. See, e.g., Bingham v. City of Tuscaloosa, 383 So.2d 542, 544 (Ala.1980) (stating that "on general due process grounds, ... any regulatory scheme enacted by the City that fails to recognize vested rights of prior interest holders” is invalid) (emphasis added); Barrington v. Barrington, 200 Ala. 315, 76 So. 81 (1917) (holding that although a statute did not violate the Constitution by impairing a contract or imposing an ex post facto punishment, it would not be applied retroactively because it affected a vested right). In contrast, the separation-of-powers principle primarily concerns the manner in which the government exercises power, not the status of a specific right harmed by the exercise of that power. See, e.g., *657 Plaut, 514 U.S. at 239, 115 S.Ct. 1447 C[T]he doctrine of separation-of-powers is a structural safeguard rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified.”) (emphasis in original); Broadway v. State, 257 Ala. 414, 60 So.2d 701 (1952) (holding, without finding any vested right, that the Legislature could not usurp the power to reopen judgments made final by the Judiciary); see generally Weaver v. Graham, 450 U.S. 24, 29-31 nn. 10 & 13, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (stating that the Ex Post Facto Clause, which operates on statutes regardless of their effect on "vested rights,” supports the separation-of-powers principle by confining the Legislature to the enactment of prospective criminal sanctions, and the Judiciary to the application of existing criminal law).
This distinction was clearly illustrated in Plaut, where the Supreme Court recognized that Congress’s retroactive extension of a limitations period does not violate the Due Process Clause by depriving defendants of a vested right. Plaut, 514 U.S. at 227-29, 115 S.Ct. 1447 (stating that Congress may retroactively extend a limitations period without violating the Due Process Clause) (citing Chase Securities Corp. v. Donaldson, 325 U.S. 304, 311 n. 8, 316, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) (noting that the retroactive extension of a statutory limitations period did not deprive defendants of a "vested right”)). Nonetheless, the Supreme Court held that Congress violated the separation-of-powers principle by commanding the Judiciary to reopen final judgments to accommodate the extended limitations period. Plaut, 514 U.S. at 219, 115 S.Ct. 1447 (stating that Congress’s command to reopen final judgments to accommodate the retroactive extension of the statutory limitations period violated the separation-of-powers principle).

. The federal version of Rule 60(b) is substantially similar to the Alabama version of Rule 60(b). The major differences are: (1) that while Alabama’s rule provides 120 days to file motions to reopen judgments on the basis of mistake, newly discovered evidence, or fraud, the federal rule provides 1 year; and (2) that while Alabama’s rule provides for an independent proceeding to set aside certain judgments within 3 years, the federal rule provides for no such proceeding.

. Both Congress and the Alabama Legislature may modify or replace rules of procedure, within constitutional limits. Under the Rules Enabling Act, 28 U.S.C. §§ 2072 and 2074, the Supreme Court promulgates rules of civil procedure and submits them to Congress for approval. In Sibbach v. Wilson & Co., 312 U.S. 1, 9-10, 61 S.Ct. 422, 85 L.Ed. 479 (1941), the Supreme Court stated: "Congress has undoubted power to regulate the practice and procedure of federal courts, and may exercise that power by delegating to this or other federal courts authority to make rules not inconsistent with the statutes or constitution of the United States.... ” Similarly, § 6.11 of Amendment 328 of the Constitution of Alabama of 1901 authorizes the Legislature to change rules of practice and procedure for Alabama courts “by a general act of statewide application.”
Although § 6.11 permits the Alabama Legislature to change rules of procedure by statutes of statewide application, this rulemaking power, like that of Congress, is not plenary. Thus, the Legislature could not, by a statute purporting to replace a rule of appellate procedure, strip the Judiciary of the power to make judgments final, and vest that power, for example, in the Alabama Senate. See Ala. Const. §§ 42, 43; amend. 328, § 6.01, 6.02; see generally Kline v. Burke Constr. Co., 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226 (1922) (noting that Congress may not restrict the constitutional jurisdiction of the Supreme Court); Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 328-31, 4 L.Ed. 97 (1816) (stating that the full judicial power must be vested in some court). Nor could the Legislature, by a statute purporting to replace a rule of civil procedure, divest itself of the power to tax and spend and vest that power in the Judiciary. See Ala. Const. §§ 42, 43, 72; amend. 328, § 6.01; Opinion of the Justices No. 211, 291 Ala. 262, 265, 280 So.2d 97, 100 (1973) (“The levying of a tax is a purely legislative power....”); Opinion of the Justices No. 64, 244 Ala. 386, 389, 13 So.2d 674, 677 (1943) (stating that under § 72 of the Constitution of Alabama of 1901 "no money shall be paid out of the State treasury except by an appropriation by the Legislature”).

.Justice Cook states that the holding of the Supreme Court in United States v. Sioux Nation of Indians, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980), establishes that § 26-17A-1 does not violate the separation-of-powers principle. 723 So.2d at 671-72 (Cook, J., concurring in part and dissenting in part). In Sioux Nation, 448 U.S. at 407, 100 S.Ct. 2716, the Supreme Court held simply that where the Government is a party to a case, it can waive its own res judicata defense without violating the separation-of-powers principle. But § 26-17A-1 does more than waive the State's own res judicata defense in paternity actions; it clearly applies to numerous cases in which the State is not a party because the mother and child have not received *658 financial assistance from the State. See, e.g., Gann v. Gann, 705 So.2d 509 (Ala.Civ.App.1997) (addressing a paternity challenge by a previously adjudicated father, where the State was not a party); Simmons v. Ellis, 628 So.2d 804, 804 (Ala.Civ.App.1993) (holding that a paternity challenge was barred by the doctrine of res judicata in an action where the State was not a party); Quebedeaux v. Lord, 599 So.2d 51 (Ala.Civ.App.1992) (holding that the issue of paternity was barred by the doctrine of res judicata in an action where the State was not a party). Indeed, in R.L.T. v. S.V.P., 703 So.2d 1002 (Ala.Civ.App.1997), the Court of Civil Appeals expressly applied § 26-17A-1 to reopen a paternity judgment in which the State was not a party. Justice Cook cites no authority, nor are we aware of any, that empowers the State to assert or to waive the defense of res judicata on behalf of others in cases to which the State is not a party.
Consequently, Justice Cook’s argument, like that of the dissenters in Plaut, 514 U.S. at 255-56, 115 S.Ct. 1447 (Stevens, J., dissenting), depends on a substantial broadening of the precedent of Sioux Nation to exempt from the operation of the separation-of-powers principle remedial legislative measures that do more than waive the Government’s own res ju-dicata defense. The majority of the Supreme Court expressly rejected the attempt to broaden the holding of Sioux Nation, concluding:
”[0]ur holding was as narrow as the precedent on which we had relied: 'In sum, ... Congress' mere waiver of the res judicata effect of a prior judicial decision rejecting the validity of a legal claim against the United States does not violate the doctrine of separation of powers.' ”
Plaut, 514 U.S. at 230-31, 115 S.Ct. 1447 (quoting Sioux Nation, 448 U.S. at 407, 100 S.Ct. 2716).

. We note that in K.M. v. G.H., 678 So.2d 1084 (Ala.Civ.App.1995), cert. quashed, 678 So.2d 1084 (Ala.Civ.App.), cert, denied, -U.S. -, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996), the Court of Civil Appeals concluded that § 26-17A-1 did not violate various provisions of the Constitution of Alabama, despite a spirited dissent arguing a separation-of-powers violation, id. at 1089, 1091— 97 (Crawley, J., dissenting). This Court’s order quashing the writ of certiorari in K.M., like a denial of a writ of certiorari, constituted no expression of approval, on the merits, of the opinion of the Court of Civil Appeals. See generally Ex parte Gentry, 689 So.2d 916, 920 n. 2 (Ala. 1996). Our holding today overrules KM. to the extent that decision upheld the retroactive application of § 26-17A-1.

. Section 27A(b) of the Securities Exchange Act of 1934, the statute struck down by the Supreme Court in Plaut, 514 U.S. at 214-15, 115 S.Ct. 1447, expressly reopened prior final judgments, by providing:
"(b) Effect on dismissed causes of action "Any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991—
"shall be reinstated on motion by the plaintiff not later than 60 days after [§ 27A(b)'s becoming law on] December 19, 1991.”
Similarly, § 5 of the 1868 act under consideration in Sanders, 43 Ala. at 177, provided:
“Be it further enacted, That any judgments or decrees rendered since the 25th day of May, 1865, when the original cause of action originated prior to that date, such judgment or decree shall be opened on application as here-inbefore provided, accompanied with an affidavit that such cause of action did originate prior to the 25th day of May, 1865.”

. Rule 60(b), Ala. R. Civ. P., provides in pertinent part:
"Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated as intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment .upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) no more than four (4) months after the judgment, order, or proceeding was entered or taken.”
(Emphasis added.)

. Justice Kennedy states that § 26-17A-1 violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. 723 So.2d at 665 (Kennedy, J., concurring in part and dissenting in part). This broad equal protection argument was not raised by the parties, and we reach no conclusion on the matter. We note, however, that § 26-17A-1 s provision of relief for previously adjudicated fathers accommodates the practical difficulties inherent in proving paternity, as contrasted with proving maternity. See Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). Further, we note that the more flexible "reasonable time” requirement we announce today for Rule 60(b)(6), Ala. R. Civ. P., is available to all parties to a paternity judgment.